283 F.2d 227
 60-2 USTC P 9743
 Genevra HEMAN, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Shelby L. HEMAN TRUST U/W, Genevra Heman and Mercantile
Trust Company, Trustees, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 Nos. 16504, 16505.
 United States Court of Appeals Eighth Circuit.
 Oct. 25, 1960.
 
 John A. Joyce and James L, Sullivan, St. Louis, Mo., for petitioners.
 Harry Marselli, Atty., Tax Division, Dept. of Justice, Washington, D.C., for respondent: Charles K. Rice, Asst. Atty. Gen., In Charge of Tax Division, Meyer Rothwacks and John J. Pajak, Attys., Dept. of Justice, washington, D.C., on the brief.
 Before JOHNSEN, Chief Judge, and VAN OOSTERHOUT and BLACKMUN, Circuit judges.
 VAN OOSTERHOUT, Circuit Judge.
 
 
 1
 The primary issue presented by these combined petitions for review of decisions of the Tax Court, timely filed by the taxpayers, is whether the cancellation of the indebtedness of Shelby L. Heman, deceased stockholder, to Trinidad Asphalt Manufacturing Company (Trinidad), a closely held corporation, for the redemption of his 250 shares of Trinidad non-cumulative preferred stock, is essentially equivalent to a taxable dividend within the purview of Section 115(g), I.R.C.1939,[1] and thus taxable as an ordinary income to Genevra Heman, decedent's widow, and Genevra Heman and Mercantile Trust Co., Trustees of a trust created by decedent's will, as distributees under Section 162(c), I.R.C.1939, 26 U.S.C.A. 162(c). The Tax Court held against the petitioners. The Tax Court's opinion, which fully sets out the facts and the Tax Court's view of the law, is published at 32 T.C. 479.
 
 
 2
 We will briefly summarize the pertinent facts. Shelby L. Heman died testate on June 6, 1947. Pursuant to his will, one-third of his net estate was distributed to his widow, Genevra, and the remaining two-thirds to Genevra Heman and Mercantile Trust Co., Trustees under a trust created by the will.
 
 
 3
 Separate petitions for review of the Tax Court decisions were filed by the widow and the trustees.
 
 
 4
 Immediately before the death of Shelby L. Heman, he and his brother John each owned 250 shares of non-cumulative preferred stock of Trinidad, this being all of the outstanding preferred stock of the company. Decedent and John each owned 474 shares of common stock, and owned 49 shares of stock in joint tenancy with right of survivorship, representing all of the common stock of the company except for three qualifying shares. As a result of Shelby L. Heman's death, the 49 shares of stock held in joint tenancy passed to the survivor, John Heman. Thus the stock ownership of Trinidad, from the time of Shelby's death up to the time of the transaction here in controversy, was as follows:
 
 
 5
 Common Stock:
John Heman ................. 523 Shares
Shelby L. Heman Estate ..... 474 Shares
Qualifying shares ............ 3 Shares
 ----
Total: .................... 1000 Shares
Non-cumulative Preferred
 Stock:
John Heman ................. 250 Shares
Shelby L. Heman Estate ..... 250 Shares
 ----
Total: ..................... 500 Shares
 
 
 6
 At the time of Shelby's death, he and John were indebted to Trinidad on open account in the respective amounts of $26,395.21 and $43,301.26. Trinidad filed a timely claim against Shelby's estate for the $26,395.21 which he owned the corporation. The probate court allowed such claim in the amount of $26,014.81. The decedent's estate consisted primarily of his Trinidad stockholdings.
 
 
 7
 On January 20, 1950, Trinidad agreed in writing with the decedent's executors to accept decedent's 250 shares of Trinidad preferred stock in satisfaction of his indebtedness to the corporation, the agreement further providing that such stock was to be held by the corporation as treasury stock. This agreement was approved by the probate court and carried out in 1950.
 
 
 8
 Also on January 20, 1950, John Heman and Trinidad entered into a written agreement for the exchange of John's 250 shares of Trinidad preferred stock for the cancellation of $26,395.00 of John's debt to the corporation.[2]
 
 
 9
 The agreement provided that the exchange be spread over a three-year period. This transaction was consummated pursuant to the agreement.
 
 
 10
 The Tax Court upheld the Commissioner's determination that under Section 115(g) Trinidad's cancellation of the decedent's indebtedness in exchange for decedent's preferred stock in said company was essentially equivalent to a taxable dividend, and was taxable one-third to Genevra Heman and two-thirds to the trust, and that the net income of such distributees for the year 1950 should be increased accordingly under Section 162(c). The Tax Court, in its opinion, states:
 
 
 11
 'Whether or not a particular transaction involves the essential equivalent of a taxable dividend is a question of fact. Ferro v. Commissioner, (C.A. 3, 1957) 242 F.2d 838, affirming a Memorandum Opinion of this Court; Regs. 111, sec. 29.115-9. There is no sole decisive test, Flanagan v. Helvering, (C.A.D.C., 1940), 116 F.2d 937, affirming a Memorandum Opinion of this Court, but a number of judicial criteria or guideposts have been determinative in placing a transaction within section 115(g).
 
 
 12
 'Among these criteria are: The presence or absence of a bona fide corporate business purpose; whether the action was initiated by the corporation or by the shareholders; did the corporation adopt any plan or policy of contraction, or did the transaction result in a contraction of the corporation's business; did the corporation continue to operate at a profit; whether the transaction resulted in any substantial change in the proportionate ownership of stock held by the shareholders; what were the amounts, frequency, and significance of dividends paid in the past; was there a sufficient accumulation of earned surplus to cover the distribution, or was it partly from capital. Flanagan v. Helvering, supra; Earle v. Woodlaw, (C.A. 9, 1957) 245 F.2d 119, certiorari denied 354 U.S. 942.' 32 T.C. 479, 486-487.
 
 
 13
 Petitioners agree with the statement made by the Tax Court to the effect that the essentially equivalent test presents a fact issue. Petitioners do not challenge the criteria to be used as guideposts as specified by the Tax Court in the foregoing quotation.
 
 
 14
 Petitioners urge that the Tax Court erred in finding that the transfer of decedent's stock to Trinidad in satisfaction of decedent's indebtedness to the corporation was equivalent to a taxable dividend. Petitioners, in their brief state 'the evidence stipulated to between the parties, and available otherwise; preponderantly requires a contrary conclusion.' The record discloses the evidence all went in by stipulation. What petitioners mean by evidence 'available otherwise', we do not know. We are limited to the consideration of evidence set out in the record. It is, of course, the function of the Tax Court as the fact finder to weigh the evidence and determine the preponderance of the evidence. This court, in dealing with the application of the essentially equivalent test, has stated:'The question as to whether a distribution in connection with the cancellation or redemption of stock is essentially equivalent to a distribution of a taxable dividend is one of fact dependent upon the circumstances of each case. * * * The determination of the Board of Tax Appeals of a question of fact will not be examined by this court beyond ascertaining whether its finding is sustained by substantial evidence. * * * And even though the evidence before the Board is undisputed, the finding of the Board will not be disturbed by this court if different inferences may reasonably be drawn from such evidence." Vesper Co. v. Commissioner, 8 Cir., 131 F.2d 200, 203; Randolph v. Commissioner, 8 Cir., 76 F.2d 472, 476.[3]
 
 
 15
 We will assume that the petitioners have adequately raised the issue that there is no substantial evidence to support the Tax Court's basic findings. The Tax Court sets out and discusses the evidence quite fully in its reported opinion. It applies the evidence to the various applicable criteria and then concludes:
 
 
 16
 'Thus, by all of the tests the present transaction is governed by section 115(g). There was no contraction of corporate activities. There was no alteration in the proportionate ownership or control of the shareholders. The past dividend policy was meager. The amount of surplus available for dividends was ample. There was no corporate business purpose sufficiently material and substantial to offset the other significant criteria of a taxable dividend. The only practical effect of the redemption was to cancel shareholders' debts as though a pro rata dividend in cash had been declared and paid.' 32 T.C. 479, 488.
 
 
 17
 Ample evidentiary support appears for the Tax Court's finding that the holding of common stock on the part of the estate and John Heman remained exactly the same after the debt liquidation trans-actions. The estate and John by virtue of contracts made with Trinidad on the same day, secured the release of substantially equal amounts of personal indebtedness for the surrender of their preferred stock. Contractual undertakings were entered into which ultimately eliminated all private holding of Trinidad's preferred stock.
 
 
 18
 The Tax Court concedes that the debt liquidation arrangement may have resulted in some benefit to Trinidad. It is obvious that decedent's estate was benefited by the transaction. The assets of the decedent's estate were burdened by the established claim. No distribution could be made until the claims against the estate were satisfied or otherwise disposed of. The executors were under legal duty to see that the assets of the estate were utilized for the purpose of paying the decedent's indebtedness.
 
 
 19
 The net effect of all factors must be considered. The existence of a single bona fide business purpose will not conclusively establish that the transaction does not result in the essential equivalent of a taxable dividend. United States v. Fewell, 5 Cir., 255 F.2d 496; Kessner v. Commissioner, 3 Cir., 248 F.2d 943.
 
 
 20
 It is clearly established that Trinidad's accumulated surplus was adequate to cover the payments here involved.
 
 
 21
 We see no point in burdening this opinion with a detailed discussion of the evidence supporting each of the Tax Court's findings. The Tax Court's opinion adequately demonstrates that its material findings and conclusions are supported by substantial evidence.
 
 
 22
 The preferred shares of stock were redeemed within the meaning of Section 115(g). The fact that such stock was retained as treasury stock does not circumvent the operation of the statute. Earle v. Woodlaw, 9 Cir., 245 F.2d 119, 128; Keefe v. Cote, 1 Cir., 213 F.2d 651, 655; Boyle v. Commissioner, 3 Cir., 187 F.2d 557, 561; Wall v. United States, 4 Cir., 164 F.2d 462, 465.
 
 
 23
 The Tax Court reached a permissible conclusion from this record in determining that the debt liquidation transaction was essentially equivalent to the distribution of a taxable dividend, and in determining that the proportionate share of each petitioner in such dividend is ordinary taxable income for the year 1950.
 
 
 24
 Some questions are raised by the petitioners with reference to additions to tax by way of penalty. Petitioner Genevra Heman was held liable for a penalty under 294(d)(1)(A), 26 U.S.C.A. 294(d)(1)(A), for failure to file a declaration of estimated tax. The petitioner concedes that she failed to file a declaration of estimated tax for 1950 and that she is subject to such penalty if her tax liability is established. The Tax Court committed no error in upholding this addition to tax.
 
 
 25
 The Tax Court also upheld the Commissioner's assessment of a penalty against Genevra Heman under 294(d)(2), for substantial under-estimation of tax. The Governmbnt concedes that Commissioner of Internal Revenue v. Acker, 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127, prohibits the assessment of such penalty under the circumstances of this case. The decision of the Tax Court as to Genevra Heman is modified by eliminating therefrom the $130.07 penalty assessed under 294(d)(2).
 
 
 26
 The trustee petitioners urge the Tax Court erred in upholding an addition to tax against them under 291(a), 26 U.S.C.A. 291(a), for failure to file a fiduciary return, Said section provides for an addition to tax 'in case of any failure to make and file return * * * unless it is shown that such failure is due to reasonable cause and not due to willful neglect.' The trustees concede that they filed no fiduciary return. They state in their brief that they had no knowledge that they were receiving a taxable dividend and were not aware that a taxation problem was presented by the transfer. The trustees offered no evidence on the reasonable cause issue. The burden is upon the taxpayer to prove that reasonable cause exists for failure to file a return. Bryan v. Commissioner, 5 Cir., 209 F.2d 822, 828; Dougherty Co. v. Commissioner, 4 Cir., 159 F.2d 269, 273; Girard Inv. Co. v. Commissioner, 3 Cir., 122 F.2d 843, 847; West Side Tennis Club v. Commissioner, 2 Cir.,111 F.2d 6, 9, 130 A.L.R. 103.
 
 
 27
 The court in the West Side Tennis Club case, supra, when confronted with a similar situation, stated:
 
 
 28
 "We do not know the steps taken by petitioner to ascertain its status as a taxpayer, and without knowledge of the basis for the belief of its officers and directors that it was exempt from tax we are in no position to test the reasonableness of the conclusion."
 
 
 29
 In out present case, we do not have the benefit of any testimony from the taxpayer on the reasonable cause issue and in the absence of any attempt by the taxpayer to introduce evidence to support its contention, we cannot say that the Tax Court erroneously determined that the trustees were subject to penalty for failure to file the fiduciary return.
 
 
 30
 Upon the petition for review of Genevra Heman, the decision of the Tax Court is modified by eliminating therefrom the addition to the tax in the amount of $130.07 imposed pursuant to 294(d)(2), and as so modified, the decision of the Tax Court is affirmed.
 
 
 31
 Upon the petition for review filed by the trustees, the decision of the Tax Court is in all respects affirmed.
 
 
 
 [1]
 'Sec.115. Distributions by corporations
 '(g) (as amended by Sec. 208(a) of the Revenue Act of 1950, c. 994, 64 Stat. 906) Redemption of Stock.--
 '(1) In general.-- If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.' 26 U.S.C.A. 115.
 
 
 [2]
 John Heman's tax liability arising out of this transaction is not before the court in these cases
 
 
 [3]
 See also Section 7482 I.R.C. 1954, 26 U.S.C.A. 7482; Greenspon v. Commissioner, 8 Cir., 229 F.2d 947, 949; Crown Iron Works Co. v. Commissioner, 8 Cir., 245 F.2d 357, 360