William B. HARGLEROAD, Jr., and Marguerite A. Hargleroad, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

Civ. No. 01038.

United States District Court
D. Nebraska.
Feb. 1, 1962.

Edward G. Garvey and David E. Beber, Omaha, Neb., for plaintiffs.

John T. Piper, Justice Department, Washington, D. C., for defendant.

ROBINSON, Chief Judge.

This is an action for the recovery of income taxes in the amount of $32,870.10 paid by the taxpayers for the calendar year 1954, together with a penalty under § 294(d) (2), Internal Revenue Code of 1939, in the amount of $1,966.41 and statutory interests thereon. The taxes, penalty, and interest were paid pursuant to a deficiency assessment and this action followed.

The single issue presented is whether a withdrawal of $49,100.00 made by the taxpayers from Benson Builders, Inc., a corporation, was essentially equivalent to a taxable dividend under the provisions of § 115 of the Internal Revenue Code of 1939, 26 U.S.C. (1952 ed.) § 115.

The Court of Appeals for the Eighth Circuit in United States v. Carey, 8 Cir., 289 F.2d 531, 537 (May 5, 1961) held that "The question of whether a distribution in redemption of stock is essentially equivalent to a dividend has been frequently considered in cases arising under the 1939 Code as one of fact dependent upon the circumstances of each case. Heman v. Commissioner, 8 Cir., 283 F.2d 227, 231; Earle v. Woodlaw, 9 Cir., 245 F.2d 119, 122; Ferro v. Commissioner, 3 Cir., 242 F.2d 838, 841; Vesper Co. v. Commissioner, 8 Cir., 131 F.2d 200, 203."

There is no single or conclusive test of whether partial liquidation is essentially equivalent to a dividend. The net effect of the transaction is at least an important consideration in determining dividend equivalency. Heman v. Commissioner, 8 Cir., 283 F.2d 227, supra; Holsey v. Commissioner, 3 Cir., 258 F.2d 865, 869; United States v. Fewell, 5 Cir., 255 F.2d 496, 499; Ferro v. Commissioner, 3 Cir., 242 F.2d 838, 841; Flanagan v. Helvering, 73 App.D.C. 46, 116 F.2d 937, 939.

Briefly, the facts in the present case, which are not in serious dispute, are as follows:

On July 3, 1933, Mr. W. B. Hargleroad, Jr. (hereinafter referred to as the taxpayer), who, together with his wife are the taxpayers herein, became associated with The Service Life Insurance Company and his association with that company continued until April 1, 1954. John A. Farber was President, Harold Farber was Secretary of the Service Life Insurance Company, and taxpayer ultimately became manager of the Mortgage Loan Department of the company.

Benson Builders, Inc. was formed in 1943 with an initial capital investment of $2500.00. John A. Farber, Harold Farber and taxpayer each contributed $833.33. The stock interest of the Farbers was not issued in their names, but at their request was put in the name of one Anne S. Schwartz, who in turn endorsed

the certificates in blank and gave them to taxpayer. Taxpayer then delivered the certificates to the Farbers. The testimony at the trial of this cause indicated the reason for this transaction was that the Farbers did not wish their interests to be of record since the Service Life Insurance Company was active in mortgage loans and they did not want other builders who were borrowing customers of Service Life Insurance Company to know that they were also interested in a company that was competing with them.

In March of 1954 taxpayer concluded to retire from business and after conferences with the Farbers it was decided that taxpayer would retire as manager of the Mortgage Loan Department of Service Life Insurance Company on April 1, 1954, and that Benson Builders would retire the Farbers' stock interest. In March of 1954, Benson Builders had a wholly owned subsidiary, Bialac Construction Company, in which it invested $15,000.00 and loans in the sum of $18,000.00. As a part of the transaction, the understanding was that the Farbers would purchase the stock of Bialac Construction Company from Benson Builders, and the indebtednesses between these parties would be paid. There was testimony to the effect that a complete liquidation of Benson Builders was not practical as many of its assets were not readily salable.

The agreed liquidating price for the Farbers' stock in Benson Builders was $24,550 for each of their 280 shares and the transaction was completed by taxpayer having a check of Benson Builders issued to him in the amount of $25,000 and by drawing a similar amount from another of taxpayer's corporations. These checks were dated April 1, 1954, and were deposited in taxpayer's personal account. On April 2, 1954, taxpayer wrote and delivered checks to each of the Farbers in the amount of $25,000. On that date the Farbers turned over the Benson Builders stock to taxpayer who had them cancelled and retired by Anne Schwartz. The records in evidence show that Benson Builders issued its check,

dated April 5, 1954, to taxpayer for $49,100 which was marked "liquidation of stock" and deposited in taxpayer's account. On that date taxpayer issued his checks to Benson Builders and his other corporation in the amount of $25,000.

The issue here resolves itself into whether the issuance of the check of Benson Builders on April 5, 1954, to taxpayer in the amount of $49,100 was "essentially equivalent to the distribution of a taxable dividend" within the meaning of § 115 of the Internal Revenue Code of 1939.

The Internal Revenue Code of 1939 § 115 provides as follows:

"§ 115. Distributions by corporations.

\* \* \* \* \* \*

"(c) Distribution in liquidation. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. In the case of amounts distributed (whether before January 1, 1939, or on or after such date) in partial liquidation (other than a distribution to which the provisions of subsection (h) of this section are applicable) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits. If any distribution in partial liquidation or in complete liquidation (including any one of a series of distributions made by the corporation in complete cancellation or redemption of all its stock) is made by a foreign corporation which with respect to any taxable year beginning on or before, and ending after, August 26, 1937, was a foreign personal

holding company, and with respect to which a United States group (as defined in section 331(a) (2) existed after August 26, 1937, and before January 1, 1938, then, despite the foregoing provisions of this subsection, the gain recognized resulting from such distribution shall be considered as a gain from the sale or exchange of a capital asset held for not more than 6 months.

\* \* \* \* \* \*

"(g) *Redemption of stock.*

"(1) In general. If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part *essentially equivalent to the distribution of a taxable dividend,* the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend." (Emphasis supplied.) 26 U.S.C. 1952 ed., § 115.

Counsel in the present case have cited decisions reported under the 1939 Code and it would serve no useful purpose here to discuss those cases that have considered the issue presented here. It is recognized in those cases that the question whether a distribution in redemption of stock is essentially equivalent to a dividend depends on the facts and circumstances of each case. See and compare: United States v. Carey, supra, 8 Cir., 289 F.2d 531, 537; Wall v. United States, 164 F.2d 462 (C.A.4th); Lowenthal v. Commissioner, 169 F.2d 694 (C.A.7th); Woodworth v. Commissioner, 218 F.2d 719 (C.A.6th); Television Industries, Inc., v. Commissioner, 284 F.2d 322 (C. A.2d); Schalk Chemical Co. v. Commissioner, 32 T.C. 879; French v. Commissioner, 26 T.C. 263; Fox v. Harrison, 145 F.2d 521 (C.A.7th); Decker v. Commissioner, 32 T.C. 326, affirmed 286 F.2d 427 (C.A.6th); Erickson v. United States, 189 F.Supp. 521 (S.D. 111.).

To support its position here that what was done amounted to a dividend, the Government must prove that taxpayer purchased the Farber stock interest on April 2, 1954, and then on April 5, 1954, taxpayer caused the corporation to redeem his stock. The testimony and the exhibits recording the transaction involved herein refutes such contention. The evidence here shows that Benson Builders issued its check to taxpayer for $25,000 and another of his corporations issued its check to him for the same amount. Both of those checks were dated April 1, 1954, and both were deposited in taxpayer's account. The next day, April 2, 1954, taxpayer issued and delivered checks for $25,000 to each of the Farbers and received from them the stock owned by them in Benson Builders, Inc. All of these stock certificates were cancelled and each certificate is marked "retired 4–2–54". They were not reissued; they were not transferred; they were retired on April 2, 1954, and a certificate was filed by Benson Builders, Inc. in the office of the Secretary of State of the State of Nebraska, on April 2, 1954, indicating that the capital stock of Benson Builders, Inc. was reduced on that date to 280 shares, being the outstanding shares owned by taxpayer.

While a circuitous method may have been used to clear the transaction for personal reasons of the Farbers, the record here does not indicate evidence of a bad faith scheme of tax evasion. Taxpayer here, on April 1, 1954, had a one-third interest in a corporation whose stock was worth approximately $75,000. On April 5, 1954, he had all of the outstanding stock of the same corporation whose value was approximately $25,000. The only distribution in evidence here was made to the Farbers and that distribution is not in issue here.

After careful consideration of the evidence presented, I have concluded that there was no distribution to taxpayers that was essentially equivalent to a dividend.

Counsel for plaintiffs will prepare Findings of Fact, Conclusions of Law and a Judgment, submit them to counsel for the defendant for approval as to form only, and present them to the Court within 30 days from the date hereof.