Bona Allen, Jr., and Evelyn Hembree Allen, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Victor H. Allen and Lucile Gaston Allen, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Estate of H. Wadleigh Allen, Deceased, Bona Allen, Jr., John Q. Allen and Victor H. Allen, Executors, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

John Q. Allen, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 93809, 93810, 93811, 93812. Promulgated January 30, 1940.

*Ellsworth C. Alvord, Esq.,* and *Floyd F. Toomey, Esq.,* for the petitioners.

*Hartford Allen, Esq.,* for the respondent.

OPINION.

DISNEY: The above proceedings, consolidated for hearing, all involve income tax for the year 1934, as follows:

| Docket No. | Deficiency | Penalty |
|---|---|---|
| 93809 | $11, 638. 44 | |
| 93810 | 11, 749. 51 | |
| 93811 | 7, 471. 99 | $1, 868. 00 |
| 93812 | 11, 875. 00 | |

Although error as to disallowance of deduction for depreciation on certain buildings was alleged by the petitioners in Docket Nos. 93810 and 93812, such error is denied by respondent's answer and no evidence was adduced in that respect, and that issue is therefore considered abandoned. The only remaining issue is common to all proceedings and is as to whether, as respondent determined, section 115 (g) of the Revenue Act of 1934 applies and there was essential equivalence to the distribution of a taxable dividend in certain transactions on May 31, 1934, whereby capital stock in Bona Allen Inc. (hereinafter called the corporation) was transferred by four stockholders to the corporation, and a partnership, in which three of the four stockholders were members, and the fourth stockholder separately were credited with certain sums upon indebtedness to the corporation. The greater part of the facts were stipulated, and the facts therein set forth are adopted by reference and found by us. In addition to the stipulation certain evidence was adduced and therefrom we make additional findings, as set forth and referred to hereinafter.

The facts stipulated will be set forth only so far as necessary to discussion of the issues involved. They may be summarized as follows: Bona Allen and his four sons were prior to 1909 in the leather business as partners. From that date the business was continued by Bona Allen Inc., of which they were sole stockholders. The only cash dividends paid were: $160,000 on July 9, 1909, $75,000 on September 30, 1918, and $75,000 on June 19, 1922. From 1918 each held 200 shares. One son, H. Wadleigh Allen, died in 1920, and the three brothers are executors of his estate, which continued to hold his stock. In 1925 the charter was amended to authorize 10,000 shares of stock of $100 par value instead of 1,000, and a resolution was passed, reciting that, inasmuch as the entire surplus of the company was needed for permanent operating capital, a stock dividend of $900,000 was declared in stock, out of the surplus. There was legitimate reason for the stock dividend. The stock continued to be owned equally by the father, sons, and the estate of the deceased son, each holding 2,000 shares. In May 1925 the sons individually, and the estate through them as executors, transferred to the corporation in equal parts 1,200 shares of

stock and each received credit for $30,000, though no minutes of stockholders or directors refer to the transaction. The stock surrendered was retained in the company treasury until November 20, 1930. Bona Allen, Sr., died testate October 18, 1925, and his stock was purchased in equal shares of 500 shares each by the three sons and the estate of the deceased son. On November 20, 1930, the corporation purchased certain real estate from the three sons and the estate of the deceased son, paid therefor with the 1,200 shares of treasury stock issued, in equal amounts to the vendors, and $100,000 was placed to the surplus of the corporation, as provided by corporate resolution.

In 1930 the three brothers individually incorporated the Allen Investment Co., the stock of which was paid for by transfer by each brother of 2,500 shares of stock of Bona Allen Inc. The Allen Investment Co., which never engaged in business, was dissolved in 1932, and stock of Bona Allen Inc. was returned to the brothers.

A partnership consisting of the three brothers had been formed in 1923 under the name of V. H. Allen & Brothers. Its business was the ownership and operation of an office building in Atlanta, Georgia, known as the Bona Allen Building. The partners considered the building the corporation's investment, and intended to transfer it to the corporation. The partnership had received at various times advances from Bona Allen Inc. These had from time to time been partly repaid, and on May 31, 1934, the partnership owed the corporation $154,760.53.

The leather business carried on by Bona Allen Inc. required extensive short term borrowing, because of purchase of hides throughout the world. The corporation ordinarily borrowed from banks and through a brokerage house in Boston, through which it obtained loans on commercial paper, at extremely low rates, from $5/8$ of 1 percent to 1 percent. To obtain such loans highest credit standing was required, and an item of prime importance was absence of debts to the corporation from its officers or stockholders, and absence of ownership of encumbered real estate. In 1930 the stockholders of the corporation owed to it about $144,000 and the brokerage house informed the corporation of the adverse effect upon its credit. Again late in 1931, when the indebtedness stood at about $165,000, the undesirable aspects of the situation were called to the attention of the corporation by the brokerage house, which reported refusal of a St. Louis bank to buy the corporation's paper because of the debt by officers to the corporation and suggested that temporary cessation of offer of the corporation's paper in the market would be to its best interest. In 1932 the indebtedness increased and the brokerage house handled less paper for the corporation, upon an understanding there would be no increase in the indebtedness. In 1933 it decreased slightly and the brokers handled more paper. In 1934 the brokerage house suggested the elimination

of the indebtedness by application thereto of proceeds of a surrender of capital stock by stockholders. The major part of the indebtedness was due to advances by the corporation because of the Bona Allen Building, operated, under mortgage, by the partnership. The brokerage house advised against transfer of the encumbered building to the corporation, and the mortgage company would not allow payment until date of maturity, about 18 months later. On May 21, 1934, the brokerage house wrote the corporation with reference to plans under consideration to reduce capital stock $300,000 at par and to clean up or reduce indebtedness from stockholders, to eliminate permanently items due from officers and stockholders and the permanent financing of the Bona Allen Building without further advances by the corporation to stockholders. All was considered by the brokers from the standpoint of the best credit interests of the corporation.

On May 31, 1934, the estate of the deceased brother was indebted to Bona Allen Inc. in the amount of $75,628.12, principally for advancements to provide support for his wife and children. At that date the executors transferred to the corporation 500 shares of stock and the corporation credited the account with $50,000. The stock certificate has never been canceled and is still held in the treasury of the company. Likewise on May 31, 1934, the three brothers individually each transferred 500 shares of stock to the corporation, and the corporation credited with $150,000 the $154,760.53 account owing to it by V. H. Allen & Brothers partnership. On May 31, 1934, the corporation had a surplus of $928,809.46 and cash of $116,919.53.

No reference was made on the minutes of stockholders or directors of the corporation, as to the matters transacted on May 31, 1934, but journal entries thereof were made upon the corporate books, and upon the books of the partnership, showing surrender of 1,500 shares of stock by the partnership, 500 shares by the estate of the deceased son, and credit of $200,000. The stock certificates surrendered have never been marked canceled and are still retained in the treasury of the corporation.

On May 31, 1935, the partnership owed the corporation $194,194.92, and on that date the partnership conveyed to Bona Allen Inc. the Bona Allen Building, and its account was credited with $300,000.

In addition to the facts stipulated, and above summarized, we find from the evidence the following additional facts: Bona Allen Inc. needed money in large amounts for short periods because of purchasing hides, its principal raw material, in a world wide market, which required cash to take advantage of lowest prices in different markets over the world, the time of purchase depending upon favorable price trends in different countries. The Bona Allen Building was encumbered by a mortgage of about $150,000 to $200,000, which did not mature until about one and one-half years after May 31, 1934, and

the mortgagee refused to allow payment until maturity. That was the reason the building was not transferred earlier to Bona Allen Inc., in connection with the opposition of the corporation's brokers to the transfer, because of the bad effect upon credit. They did not wish the corporation to have the building, with the mortgage. John Q. Allen, vice president of the corporation, was always ambitious to have his name classed as entitled to prime credit. By May 31, 1935, the earnings of the corporation had become satisfactory and the mortgage was paid off, with earnings of the corporation.

Under all of the above circumstances, does section 115 (g) of the Revenue Act of 1934,[1] apply? Was there redemption of stock at such time and in such manner as to make the redemption essential to the distribution of a taxable dividend? The respondent having determined that the retirement entailed a taxable dividend, the petitioner has the burden to show otherwise.

We think such showing has been made. Numerous cases have laid down the rule that the statute must be interpreted in the light of the facts in each situation. Decisions are varied, some finding and others denying equivalence to distribution of a taxable dividend. They need not be enumerated. The crux of the matter here is that stockholders were indebted to the corporation, that the corporation's business was such that it required large amounts of money on short term notes and had for several years been in the habit of borrowing, through brokers, such money at extremely low rates of interest, that in order to secure such low interest rates it was necessary to maintain a high credit standard, and that the brokers objected to loans to the stockholders or officers of the corporation. They vigorously urged the elimination of such loans even to the extent of suggesting a cessation of borrowing after one bank, which had been in the habit of lending to the corporation through the brokers, had declined to do so because of the indebtedness of the stockholders. At the brokers' suggestion the indebtedness from stockholders was largely eliminated by the redemption of stock in equal amounts from each stockholder. The corporation had always been closely owned, and for nine years there had only been four stockholders, and never more than five. Though the stock redeemed had been issued as a stock dividend, this had been nine years before and for legitimate business purposes. No contention to the contrary seems advanced. Because of the close ownership of the corporate stock by the four stockholders, there seems to have been no great advantage to the stockholders as individuals in the redemption of stock. They con-

---

[1] (g) REDEMPTION OF STOCK.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

tinued to own the stock in the same equal proportions. The principal advantage to them was the advantage to the corporation in obtaining a better credit rating because of the elimination of indebtedness from stockholders or officers. No reason for the redemption appears except to affect credit relations. No extraordinary profits were present for distribution, such as have in some cases caused conclusion that there was essentially a taxable dividend. The reasons advanced for the redemption of stock are not met by any contrary evidence. We think that the reason given for the transaction is a legitimate business reason. Certainly the obtaining of loans at as low as less than 1 percent per annum was an important consideration to the corporation and to the stockholders thereof. Although respondent suggests that the same result might have been obtained by a cash dividend to the stockholders and the payment of their indebtedness to the corporation, the corporation had on hand cash sufficient to pay little more than one-half of the amount of indebtedness eliminated by the redemption of stock, and the record throughout indicates the necessity for the retention of cash at all times by the corporation so that obviously the corporation could not with safety to its business pay out all of its cash to the stockholders. There is no proof in the record of intent to evade tax. The situation, we think, is much like that appearing in *Harry A. Koch*, 26 B. T. A. 1025, wherein it was held that a redemption was not violative of section 115 (g) of the Revenue Act of 1928. Therein the petitioner, president and holder of most of the stock of a corporation, was endorser upon notes given by it to a bank. The bank was not satisfied with the financial statement of the corporation and stated that a more healthy condition would have to be shown and that it would suffice if there were reduction of capital stock. The reduction was accomplished by purchase of shares from the petitioner and smaller amounts from others, and the purchase price of the stock acquired from petitioner was credited to his personal account on the corporate books. This satisfied the bank and it continued to extend credit to the corporation. Here the suggestion of reduction of capital stock, in essentially the same manner as it was carried out, came not from the stockholders but from the loan brokers who were interested in borrowing money from banks and others for the corporation, just as in *Harry A. Koch*, *supra*, it came from the bank. We there held, in effect, that the reason was valid and based upon business needs, and we think the same applies here.

In *George A. Lembcke*, 33 B. T. A. 700, we again approved a situation similar to that herein. There, as stated in the headnote:

* * * The evidence disclosed that the increases were made not to disguise later distributions of cash dividends, but for legitimate business purposes, namely, in order to satisfy the demand of banks for a larger capitalization in order to obtain unsecured short term loans necessary for the operation of the business,

and in order to satisfy the request of a stockholder anticipating retirement from active participation in the business that the larger portion of the stockholders' investments be placed in preferred stock. *Held,* that amounts distributed in redemption of the preferred stock were not to be treated as taxable dividends under section 115 (g), Revenue Act of 1928.

In the body of the opinion we said:

\* \* \* The corporation was forced by the necessities of its business to borrow a considerable amount of money from banks on its short term unsecured paper. The banks making these loans preferred that the corporation should have a larger capitalization and felt that the credit which they extended to the corporation would be better secured if such an increase were made. The witness stated that this was one of the reasons for the increase in 1927 and also one of the reasons for the increase in 1929. \* \* \*

We said that such reasons could not be disregarded and that neither the time nor the manner of the redemption indicated an ordinary dividend.

We think the situation here is definitely distinguishable from that in *J. Natwick,* 36 B. T. A. 866. Although there the indebtedness of the principal stockholder in a corporation was canceled in consideration of delivery of a part of his stock, we found:

\* \* \* The banks apparently regarded unfavorably petitioner's indebtedness to the company, but there was no suggestion or insistence on the part of the banks that any alteration be made in the capital structure of the company. \* \* \*

We said also that the only evidence of pressure being brought to bear by banks was that one called petitioner up several times and regarded unfavorably his large debt to the company, but that "There is no evidence of any demand for the reduction of capital, nor is it shown how the company's financial condition would be bettered by such a reduction." The situation we therefore distinguished from that in *Harry A. Koch, supra.* It seems to us that our language above indicates well that where there is decided pressure in a financial way and a suggestion from others that there be reduction of capital stock, the situation presents legitimate business purpose and negatives the mere desire to avoid dividends. We therefore conclude and hold that the surrender of stock by the petitioners in Bona Allen Inc. was not made at such time or in such manner as to be essentially equivalent to the distribution of a taxable dividend.

Such conclusion renders it unnecessary for us to pass upon the other propositions presented by the petitioner, that is, as to whether under the thought of *Patty v. Helvering,* 98 Fed. (2d) 717, the good faith of the original issuance of the stock retired renders unnecessary examination of circumstances surrounding redemption; and whether under *Parker v. United States,* 88 Fed. (2d) 907, purchase of the stock redeemed from other stockholders rather than the corporation itself obviates consideration of section 115 (g).

*Decision will be entered under Rule 50.*