BERTRAM MEYER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4951.   Promulgated May 31, 1945.

*Sydney A. Gutkin, Esq.*, for the petitioner.
*Jonas M. Smith, Esq.*, for the respondent.

**OPINION.**

Sᴍɪᴛʜ, *Judge*: The respondent has determined that the amounts received by the petitioner from the Bersel Realty Co. in the years 1938, 1939, 1940, and 1941 were essentially equivalent to the distribution of taxable dividends by the company and that these amounts should have been included in his gross and net incomes.

The pertinent provision of the Revenue Act of 1938 and of the Internal Revenue Code is section 115, which, so far as material, reads as follows:

(g) Rᴇᴅᴇᴍᴘᴛɪᴏɴ ᴏꜰ Sᴛᴏᴄᴋ.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in

whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

The petitioner denies that the amounts received by him from Bersel Realty Co. during the taxable years constituted taxable distributions under section 115 (g). He submits that the noncumulative preferred stock of the Bersel Realty Co. was bona fide issued for property paid in to the corporation by him and that the redemption of shares of that stock during the taxable years was a redemption of original stock issued and not a redemption of shares of stock issued as a stock dividend. The petitioner relies upon *Patty* v. *Helvering* (C. C. A., 2d Cir.), 98 Fed. (2d) 717, wherein it was stated: "Therefore we hold that if redeemed shares have been issued bona fide, § 115 (g), 26 U. S. C. A., § 115 (g) never applies." We think, however, as we have before said, that the principle laid down by the Second Circuit in *Patty* v. *Helvering, supra,* is stated too broadly. Cf. *A. E. Levit,* 43 B. T. A. 1077, 1084, and cases cited therein. All of the circumstances under which the shares are redeemed must be taken into account. This is in accordance with the Commissioner's regulations, article 115-9 of Regulations 101.

In *Hyman* v. *Helvering* (App. D. C.), 71 Fed. (2d) 342, the court said:

* * * Undoubtedly the tax law recognizes a distinction between liquidating dividends and dividends out of profits, and provides a different basis on which to tax them. The purpose of Congress in the inclusion of (g) was to narrow the distinction to the end that corporations might not by resort to the device of stock redemption or cancellation make a distribution to its shareholders essentially resulting in a division of profits. In both the House and Senate reports, and in the conference reports, an illustration is given showing the congressional purpose. The illustration supposes, under the tax laws prior to the amendment involved here, the case of two men holding practically the entire stock of a corporation for which each paid $50,000. The corporation, having accumulated a surplus of $50,000 above its cash capital, buys from the stockholders for cash one-half of the stock held by them and cancels it, and the payment is nontaxable because it is a partial redemption of stock. To change this result and make it taxable (g) was written and incorporated into the law. * * *

In *Smith* v. *United States* (C. C. A., 3d Cir.), 121 Fed. (2d) 692, the court said:

* * * However, it is our opinion that the bona fides in a company's capitalization of its earnings is immaterial to the applicability of Section 115 (g). If the stock is cancelled or redeemed "at such time and in such manner" as to make the cancellation or redemption essentially equivalent to a distribution of earnings or profits accumulated after February 28, 1913, the distribution is taxable as a dividend. Such is the express requirement of Section 115 (g) "whether or not such stock was issued as a stock dividend." The statute is aimed at the result. The basic criterion for the application of Section 115 (g) is "the net effect of the distribution rather than the motives and plans of the taxpayer or his corpora-

tion." *Flanagan* v. *Helvering*, App. D. C., 116 F. 2d 937, 939, 940. The net effect of the distribution in the instant case upon the redemption and cancellation of the plaintiff's stock was essentially equivalent to the distribution of a taxable dividend. The Commissioner's assessment was, therefore, proper and the plaintiff is without right of recovery.

We consider it immaterial whether, as petitioner contends, the preferred stock was issued bona fide and for property of a value equal to the par value of the shares issued therefor. The important consideration is that under its plan the corporation could, by redeeming shares of that stock from year to year, distribute all of its earnings tax-free to its sole stockholder. So far as the record shows, the corporation never sold any part of the assets paid in to it for stock. Redemptions were made out of the excess of cash receipts over cash disbursements. The amount of the redemptions was somewhat in excess of the taxable earnings of the corporation, for the reason that the company was permitted to deduct from cash receipts amounts representing depreciation upon depreciable assets. But it appears that the principal amount of the redemptions was from taxable earnings of the company.

The petitioner testified that he did not want to have a capital investment in the Bersel Realty Co. in excess of $1,000,000 and that the shares of preferred stock issued in excess of $1,000,000 were intended to represent a loan to the corporation. He argues that he should therefore be entitled to recover back from the corporation, without being subject to any income tax thereon, an amount of $850,000 through redemptions of the noncumulative stock.

That the excess amount paid in to the corporation over $1,000,000 may have been intended as a loan is likewise immaterial. The entire amount of real estate and other assets paid in to the corporation beyond $2,510.70 was placed at the risk of the corporate business. The corporation had no liability to its stockholders in respect of the capital paid in. It was not paying off indebtedness by redeeming its stock.

In our opinion Bersel Realty Co. was organized for the purpose of permitting the petitioner to receive from the company, through redemptions of noncumulative preferred stock, the earnings of the company for a period of years tax-free. We therefore think that the respondent did not err in holding that the redemptions of the noncumulative preferred stock of Bersel Realty Co. for the years 1938, 1939, 1940, and 1941 were at such time and in such manner as to make the distributions essentially equivalent to the distribution of taxable dividends.

The petitioner argues that, if the redemptions of the preferred stock are within the ambit of section 115 (g) of the statute, he nevertheless is not liable for income tax upon the amounts received by him during the taxable years for the reason that the Bersel Realty Co. had no ac-

cumulated earnings during the years 1938 to 1941, inclusive, which had been accumulated since February 28, 1913; in other words, the argument is that prior to 1938 $550,000 had been paid to the petitioner in redemption of the noncumulative preferred stock and that this amount was in excess of the amount shown on its books at December 31, 1938, as its earned surplus and undivided profits, namely, $374,433.37.

The $550,000 which was paid out by the corporation prior to 1936 in redemption of the preferred stock was clearly in excess of the corporation's earnings up to that date. The evidence is that these redemptions were charged to capital account. They can have no bearing upon the question of the amount of earnings accumulated since those redemptions which were available for the payment of dividends during the years 1938 to 1941, inclusive.

Under the taxing statute the latest accumulated earnings of a corporation are to be included in the distributions of the taxable year. Sec. 115 (b), I. R. C. The evidence does not show the amount of earnings of the corporation available for distribution to stockholders at January 1, 1938. The earnings of the corporation for 1936 and 1937 are not shown. The earnings of 1938 available for distribution were $46,339.20. The evidence fails to show that there were not on hand during 1938 earnings available for distribution of at least $50,000. The evidence does show that the earnings available for distribution for the years 1939, 1940, and 1941 were in excess of the $25,000 paid during each of those years in the redemption of stock. The evidence fails to show error on the part of the respondent in holding that the amounts received by the petitioner from Bersel Realty Co. during the taxable years in redemption of its preferred stock were essentially equivalent to the distribution of taxable dividends.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

MURDOCK, *J.*, dissenting: The petitioner in this case was responsible for the organization in 1925 of a realty company. He gave the corporation property in exchange for its shares at the time of incorporation. The finding is that the fair market value of the property turned in for the shares was equal to the par value of the shares. Among the shares received by the petitioner were some preferred shares. It was the desire of the petitioner at the beginning that his investment in the corporation should not exceed $1,000,000, and that the corporation would retire the preferred shares in excess of that amount as soon as it could do so. There were restrictions upon the payment of dividends until this was done. Some of these preferred shares were retired prior to the taxable years and some more were

retired during the taxable years. The stock was retired at par, the same amount which the petitioner had originally paid for that stock in property when the corporation was organized. Thus, he paid $100 per share in to the corporation for the stock and now the corporation has paid the same amount back to him in retirement of the stock.

The majority holds that the distributions in retirement of these shares in the taxable years were substantially equivalent to the distribution of taxable dividends within the meaning of section 115 (g), but it fails to explain satisfactorily why this is so or cite any direct authority for it. An illustration from the committee reports indicating that the retirement of the shares originally paid for in cash could come within (g) is given, but the opinion does not demonstrate to my satisfaction how or why the retirement in the present case comes within that provision.

The case of *George O. Rockwood*, 31 B. T. A. 927; affd., 82 Fed. (2d) 359, would seem to be in point. There, stock which had been issued for cash or property was later retired because the capital was no longer needed in the business. There were earnings and profits in excess of the amount paid in redemption of the stock and yet the holding was that section 115 (g) did not apply. Here, the petitioner did not want to invest more than a million dollars of his funds in this corporation. Reluctantly, however, he did invest about $850,-000 more than his million, with the expressed desire and understanding that the corporation would pay it back by retiring the stock just as soon as it could spare the necessary funds. The retirements would indicate that the corporation had sufficient working capital represented by the million dollars which the petitioner paid in, plus subsequent earnings, and no longer needed the capital which it was returning to the petitioner. The mere fact that it was using accumulated earnings in its business and was able to return the petitioner's capital is no justification for holding that the retirement of this stock was substantially equivalent to the distribution of a taxable dividend under the circumstances of this case. The purpose which the petitioner always had in mind is clear and it doesn't seem to me that it was a purpose to avoid the payment of dividends to him. It simply was that he didn't want to have so much of his capital invested in the corporation. If, perchance, the corporation has accumulated earnings beyond its needs for the purpose of preventing the imposition of surtax on the petitioner, section 102 will apply, but that is not the question here. The situation, after this stock is retired, will be no different from what it would have been if the petitioner had loaned the money in excess of a million dollars and the loan had been repaid without interest, which is what he wanted to do in the first place.