Eva D. Bradbury v. Commissioner.
Bradbury v. Commissioner
Docket No. 79514.
United States Tax Court
T.C. Memo 1961-104; 1961 Tax Ct. Memo LEXIS 259; 20 T.C.M. (CCH) 491; T.C.M. (RIA) 61104; March 31, 1961
Raymond S. Oakes, Esq., and Chester N. Foss, C.P.A., for the petitioner. Charles T. Shea, Esq., for the respondent SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the taxable year 1956 in the amount of $7,518.89. The issue for decision is whether the redemption by the L. L. Bradbury Corporation of 44 shares of petitioner's stock for the cancellation of her indebtedness to the corporation in the amount of $21,069.94 and a credit to her account of $1,420.34 is essentially equivalent to a dividend under section 302 of the Internal Revenue Code of 1954. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner is an individual who resides at Hollis Center, Maine. She filed her income tax return for the taxable year 1956 with the district director of internal revenue at Augusta, Maine. At all times here material, petitioner kept her books and filed her income tax returns on the cash basis and her taxable year was the *261 calendar year. In 1956 petitioner was 66 years old. Her husband had died in 1935. Prior to her husband's death he had been engaged in a lumber business. After her husband's death petitioner kept the business going and in 1938 organized the L. L. Bradbury Corporation (hereinafter referred to as Bradbury Corp.). All of the issued and outstanding capital stock of Bradbury Corp., which consisted of 300 shares of common stock, was originally issued in 1938 and 1939 to petitioner except for two qualifying shares issued to two nominees of petitioner for no additional consideration. According to the books of the Bradbury Corp., the value of the 300 shares of common stock held by petitioner and her nominees in December 1939 was $100,599.54. Beginning on July 30, 1938, and continuing through 1956, Bradbury Corp. maintained an open account on its books in petitioner's name, which account is hereinafter referred to as petitioner's account. Whenever petitioner was in need of cash, she would request Bradbury Corp. for the amount needed. The amount would be given to her and her account debited. In some instances petitioner would request the Bradbury Corp. to make payments to other persons for *262 her benefit and this would be done and her account debited with the amount. Petitioner, from the time the corporation was organized through the year 1956, was treasurer of the corporation and during all of these years drew a salary from the corporation. Her account was credited with the amount of her salary. For the taxable year 1945, the Bradbury Corp. declared a dividend of $3,000 and $2,980 was credited to petitioner's account as a dividend on December 31, 1945. For the taxable year 1946, the Bradbury Corp. declared a dividend of $3,000 and $2,980 was credited as a dividend to petitioner's account on December 31, 1946. For the taxable year 1946 the Bradbury Corp. declared a dividend of $4,500 and $4,455 was credited to petitioner's account as a dividend on April 30, 1949. For the taxable year 1950, the Bradbury Corp. declared a dividend of $4,500 and $3,960 was credited to petitioner's account as a dividend on June 12, 1950. For the taxable year 1951 the Bradbury Corp. declared a dividend of $4,500 and on June 30, 1951, $3,960 was credited as a dividend to petitioner's account. For the taxable year 1952, the Bradbury Corp. declared a dividend of $4,500 and on June 30, 1952, $3,465 *263 was credited to petitioner's account as a dividend. No formal dividends were declared or paid by Bradbury Corp. on the outstanding common stock from the taxable year 1953 to the taxable year 1956, inclusive. Petitioner's account showed some other credit items in addition to her salary and the dividends credited thereto. From October 1939 until July 2, 1956, the balance in petitioner's account was continuously in the debit column. On July 2, 1956, the petitioner's account showed petitioner indebted to the Bradbury Corp. in the amount of $21,068.94. On that date petitioner transferred to the treasury of Bradbury Corp. 44 shares of her stock. The Bradbury Corp. credited petitioner's account in the amount of $22,489.28, leaving a credit balance therein of $1,420.34. Olive Landry is petitioner's daughter. In 1944 Olive graduated from college and in 1945 was married to Carl A. Landry, and Olive and Carl have remained married throughout all periods here material. From the date of incorporation of Bradbury Corp. until November 7, 1947, petitioner owned all of its outstanding stock except two qualifying shares. On November 7, 1947, petitioner transferred one share of her stock to her *264 daughter Olive, and thereafter until December 1, 1949, petitioner owned 297 shares of stock of Bradbury Corp. On December 1, 1949, she transferred 66 shares to Olive, and on November 20, 1953, she transferred 6 shares to Olive. On May 19, 1954, Olive transferred 6 shares to her husband Carl. On November 27, 1954, petitioner transferred one of the original qualifying shares to Olive, and on the same day transferred 6 shares of her stock to Olive and 6 to Carl. On November 25, 1955, petitioner transferred the other qualifying share to Carl and 6 shares of her stock to Olive and 6 to Carl. On July 2, 1956, petitioner transferred 6 shares of her stock to Olive and 6 shares to Carl. On July 2, 1956, the date of petitioner's transfer of the 44 shares of her stock to the Bradbury Corp., petitioner held, before considering the transfer to the Bradbury Corp., but after taking into account the 6 shares each transferred to Olive and Carl on the same day, 177 shares of the stock of Bradbury Corp.; Olive held 86 shares and Carl, 25, making a total of 288 shares outstanding. On December 31, 1952, Bradbury Corp. had redeemed 6 shares of its common stock from petitioner and transferred to her real *265 estate with a book value to the corporation of $3,040.14. On December 31, 1953, Bradbury Corp. had redeemed 6 shares of its common stock from petitioner and on that date credited her account on its books with $3,056.28. After the transfer of the 44 shares of Bradbury Corp. stock by petitioner to the corporation on July 2, 1956, the outstanding stock of that corporation was 244 shares, of which petitioner held 133 shares, Olive Landry, 86 shares and Carl A. Landry, 25 shares. Since the redemption of the 44 shares of common stock, Bradbury Corp. has continued in its business, and has continued to hold the 44 shares redeemed as treasury stock. Bradbury Corp. had not adopted a plan or policy of contracting its business prior to the redemption of petitioner's 44 shares of common stock, and its business has not been contracted since such redemption. The amounts of Bradbury Corp.'s gross profit and net profit before and after taxes for the taxable years 1945 through 1959, according to its books and records were as follows: Net Profit
Net Profit
Gross
Before
After
Year
Profit
Taxes
Taxes
1945
$39,854.90
$11,891.38
$8,689.58
1946
37,874.42
8,262.22
6,461.91
1947
25,737.71
(2,417.30)
(2,417.30)
1948
40,262.55
10,524.40
8,203.79
1949
24,682.58
(3,557.58)
(3,557.58)
1950
46,917.15
10,697.54
8,237.11
1951
47,702.72
11,996.74
8,583.43
1952
41,431.42
7,575.75
5,303.02
1953
28,885.87
(9.62)
(9.96)
1954
25,362.41
667.56
459.64
1955
30,264.83
178.90
117.53
1956
22,878.08
(5,530.95)
(5,530.95)
1957
37,499.34
5,338.69
5,145.32
1958
29,226.06
295.86
207.10
1959
26,276.31
(6,118.38)
(6,118.38)
*266 The amount of accumulated earnings and profits of Bradbury Corp. available for dividends, its cash balances, and the book value before depreciation of its buildings and equipment as of the end of each of the years 1954 through 1959 were as follows: Accumulated
Buildings
earnings
Cash
and
Year
and profits
balances
equipment
1954
$52,813.68
$2,120.77
$53,461.92
1955
52,931.21
4,231.91
54,881.42
1956
47,400.26
3,872.73
60,033.06
1957
52,545.58
924.08
66,601.25
1958
51,216.27
2,807.46
88,841.21
1959
45,937.91
3,973.08
89,804.61
The business of Bradbury Corp. is located in York County, Maine and consists of the manufacture of long lumber and box chutes which were made into boxes in a separate building called the "box mill." The sawmill it was using in 1956 had been built around 1917 or 1918; and although it was a good mill when built, by 1956 it had become obsolete and could not be operated as efficiently as a modern mill. Carl A. Landry, who was Vice President of Bradbury Corp. in 1956, investigated the possibility of buying a more modern sawmill but did not find one he considered satisfactory and the corporation decided that *267 it would build a new mill. Construction on the new mill was started sometime late in 1956 or early in 1957. For some time prior to 1956 Bradbury Corp. had borrowed money from the Canal National Bank for operating expenses. In February 1956 petitioner, Olive Landry, and Carl Landry went to the bank to discuss with one of the officials thereof named Ireland the possibility of the corporation's obtaining a loan for the purpose of building a new mill, the amount to be repaid over a more extended period of time than the amounts which it had borrowed for use as operating funds. The bank official asked for copies of Bradbury Corp.'s financial statements for the past 2 or 3 years and also a statement for the current quarter. In February 1956 the bank made a loan to Bradbury Corp. of $10,000 to be used by the corporation for the purpose of purchasing box lumber. This loan was to be repaid over a period of 5 or 6 months as the output of the box mill was sold. This loan was subsequently repaid. In June of 1956 petitioner, Olive Landry, and Carl Landry again called on officials of the Canal National Bank. Ireland told them that he did not like the account due from Eva D. Bradbury which as *268 of December 31, 1955, was in the amount of $20,269.71 and he felt that this account should be "cleaned up some way" but he made no suggestion as to how this should be done. Thereafter, petitioner, Olive Landry, and Carl Landry talked among themselves and at the suggestion of petitioner, decided that she would transfer 44 shares of her stock to the Bradbury Corp. and her account would be credited with $22,489.28. Olive and Carl Landry consented to this transaction. At all times here material there was a friendly relationship between petitioner and Olive and Carl Landry, and there was at no time any animosity between them. After petitioner had transferred the 44 shares of stock and her account had been credited with the $22,489.28, she took a financial statement of the corporation to the bank. In late 1957 or early 1958 the corporation received a loan from the bank for use in constructing a new sawmill with arrangements for repayment on a monthly basis, payments to be completed in August 1961. The amount borrowed from the bank for this purpose was available for the corporation to draw on and was drawn on as needed starting in late 1957 or early 1958. The total of all the amounts borrowed *269 for construction of the new sawmill was approximately $12,000. Since box lumber comes from trees which are not sufficiently straight to make into other types of lumber and such trees must be cut with the better trees, it is necessary in a lumber business such as the one operated by Bradbury Corp. to manufacture some box lumber. When the new sawmill was completed in the spring of 1958, the old sawmill was closed down by Bradbury Corp. The box mill was closed sometime in 1959, and since that time all box lumber manufactured by Bradbury Corp. in the new mill has been sold to others. There was no plan on the part of the corporation to close the box mill when the new sawmill was opened and the box mill was not closed because of the opening of the new sawmill. The notes payable by the Bradbury Corp. as of December 31 of each of the years 1956 through 1959 were as follows: December 31, 1956
$ 9,455.56
December 31, 1957
3,900.00
December 31, 1958
10,566.68
December 31, 1959
12,326.22
Petitioner now owns no stock in Bradbury Corp. In February 1958 Olive and Carl Landry purchased all of the stock in Bradbury Corp. then held by petitioner and gave her a note in payment *270 therefor. Petitioner had at various times from 1950 through 1957 discussed with her daughter Olive the possible sale to Olive and Carl Landry of her stock in the Bradbury Corp., but the first actual agreement reached with respect to such sale was in February 1958. Petitioner, on her income tax return for the year 1956, reported the amount of $22,489.28 as a distribution in full payment in exchange for the redemption of 44 shares of Bradbury Corp.'s stock. She showed the basis of the 44 shares to be $14,754.52 and a long-term capital gain of $7,734.76. Respondent, in his notice of deficiency, determined that petitioner received a taxable dividend in the amount of $22,489.28 in July 1956 upon the redemption of the 44 shares of common stock of the Bradbury Corp. and increased the net income as disclosed by her return by this amount less the amount of $3,867.38 reported by her as the taxable portion of the long-term capital gain. Opinion Under section 302(a) of the Internal Revenue Code of 1954 (hereinafter all code references are to the Internal Revenue Code of *271 1954 unless otherwise indicated), if a corporation redeems its stock, such redemption shall be treated as a distribution in part or full payment in exchange for stock if paragraphs 1, 2, 3, or 4 of section 302(b) apply. Otherwise, the distribution is taxable in accordance with section 301. Paragraphs 2, 3, and 4 of section 302(b) are obviously inapplicable to the factual situation here presented and neither party contends otherwise. Section 302(b)(1), which petitioner contends is here applicable thus bringing the redemption within section 302(a), provides that subsection (a) shall apply "if the redemption is not essentially equivalent to a dividend." Therefore, the question for decision here is whether the redemption of the 44 shares of stock of Bradbury Corp. is essentially equivalent to a dividend. Cf. Thomas G. Lewis, 35 T.C. 71 (Oct. 20, 1960). Whether a particular transaction is such as to be essentially equivalent to a dividend is a question of fact. Although there is no sole decisive test, a number of judicial criteria have been used. Among these are: * * * The presence *272 or absence of a bona fide corporate business purpose; whether the action was initiated by the corporation or by the shareholders; did the corporation adopt any plan or policy of contraction, or did the transaction result in a contraction of the corporation's business; did the corporation continue to operate at a profit; whether the transaction resulted in any substantial change in the proportionate ownership of stock held by the shareholders; what were the amounts, frequency, and significance of dividends paid in the past; was there a sufficient accumulation of earned surplus to cover the distribution, or was it partly from capital. [Genevra Heman, 32 T.C. 479, 487 (1959), appeal dismissed (C.A.D.C.)] The net effect of the distribution rather than the motives and plans of the taxpayer or the corporation is the fundamental question. United States v. Fewell, 255 F. 2d 496 (C.A. 5, 1958). Cf. Samuel H. Kessner, 26 T.C. 1046, 1051 (1956) and cases therein cited, affirmed per curiam 248 F. 2d 943 (C.A. 3, 1957). A number of cases have *273 dealt with situations similar to the one here involved where the stock was redeemed for the cancellation of indebtedness. In some situations where it has appeared that such a redemption was for the purpose of obtaining necessary credit for the operation of the business of the corporation and the reduction in capital by the redemption of stock was suggested by the bank or other person extending the credit, the redemption has been held not to be essentially equivalent to a dividend. Harry A. Koch, 26 B.T.A. 1025 (1932), and Bona Allen, Jr., 41 B.T.A. 206 (1940). However, were it appears that the suggestion of the reduction in capital did not come from the bank and the company's financial condition did not appear to be bettered by such reduction, redemption of stock in cancellation of indebtedness where the facts otherwise warranted, has been held to be essentially equivalent to a dividend even though a bank or other creditor may have regarded unfavorably debts due to the corporation by officers. J. Natwick, 36 B.T.A. 866 (1937), and Hirsch v. Commissioner, 124 F. 2d 24 *274 (C.A. 9, 1941), affirming 42 B.T.A. 556. Cf. Carl G. Ortmayer, 28 T.C. 64, 75 (1957), affd. (except as to determination of amount constituting contribution to capital) 265 F. 2d 848 (C.A. 7, 1959). In the instant case no official of the bank testified. It appears that the bank had given loans to the corporation for purposes of operating the business without requiring that the indebtedness of petitioner to the Bradbury Corp. be cancelled and that the loan for the purpose of building a new mill was not in a substantially larger amount than prior operating loans. The first loan for construction of the new mill was not made until about 18 months after the transaction here involved occurred. Petitioner had consistently drawn on her Bradbury Corp.'s account for living expenses and had previously credited her salary and dividends to the account. Petitioner directly and indirectly owned 91.3 percent of the stock prior to the redemption and 89.7 percent thereafter. Section 318(a)(1)(A) and 318 (a)(4)(B). Cf. Thomas G. Lewis, supra.The corporation had not adopted a plan or policy of contraction prior to the redemption of petitioner's *275 stock and there was no contraction of the corporate business thereafter. The corporation had sufficient earned surplus to cover the distribution. We consider the net effect of the transaction here to be essentially equivalent to a dividend. The petitioner argues that the cash of the corporation was not sufficient to declare the amount of the account due from petitioner to the Bradbury Corp. in a cash dividend. However, in prior years when dividends had been declared, the amount thereof had been credited to petitioner's account. Therefore, this argument is unimpressive. Petitioner makes some argument that she intended to eventually sell her stock to her daughter and son-in-law but there is no evidence that there existed any definite intention in this regard on her part in 1956 or that the redemption of the 44 shares of stock on July 2, 1956, was in any way connected with the sale by petitioner in 1958 of her remaining stock to her daughter and son-in-law. Decision will be entered for the respondent.