Herbert E. Pliner and Rosalie Pliner v. Commissioner.
Pliner v. Commissioner
Docket No. 71523.
United States Tax Court
T.C. Memo 1961-218; 1961 Tax Ct. Memo LEXIS 130; 20 T.C.M. (CCH) 1073; T.C.M. (RIA) 61218; July 31, 1961
*130 Daniel S. Greenstein, Esq., Western Saving Fund Bldg., Philadelphia, Pa. for the petitioners. Frederick A. Levy, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in income tax of petitioners for the year 1953 in the amount of $1,995.54. The sole issue for decision is whether the redemption of preferred stock of which petitioner Herbert E. Pliner was the owner of record by the H. E. Pliner Shoe Company was at such time and in such manner as to be essentially equivalent to the distribution of a taxable dividend within the provisions of section 115(g) of the Internal Revenue Code of 1939. Findings of Fact Petitioners are husband and wife who during the taxable year here involved resided at Wyncote, Pennsylvania. They filed a joint income tax return for the year 1953 with the district director of internal revenue at Philadelphia, Pennsylvania. Herbert E. Pliner (hereinafter referred to as petitioner) commenced a children's retail shoe business in 1936, which he operated as a sole proprietorship from that time to August of 1946. Petitioner's original investment in this shoe business was approximately *131 $1,500, and by August of 1946 the business had a value of approximately $40,000. In August of 1946 petitioner transferred all the assets of his children's shoe business then being operated as a sole proprietorship, subject to the liabilities thereof, to the H. E. Pliner Shoe Company, a Pennsylvania corporation (hereinafter referred to as Pliner Company), in exchange for all the issued and outstanding capital stock thereof, 403 shares. The authorized capital stock of Pliner Company was 500 shares. In the early part of 1948 petitioner decided that Pliner Company should add a men's shoe department to one of its stores. In order to finance the addition of the new department, Pliner Company and petitioner executed a judgment note in the amount of $10,000 to Henry Sklar, a personal friend of petitioner's and placed the $10,000 received from the note in the bank account of Pliner Company. Shortly after the $10,000 had been placed on deposit to the account of Pliner Company, petitioner had conversations with the representatives of its principal creditors and its bank and ascertained that they felt that the financial structure of Pliner Company would be better if the $10,000 was in the *132 form of preferred stock. In July of 1948, the articles of incorporation of Pliner Company were amended and the authorized capital stock was changed to 750 share of $100 par common stock and 500 shares of $100 par nonvoting preferred stock. Petitioner exchanged his 403 shares of capital stock of Pliner Company for 403 shares of common stock of that company, and 100 shares of the company's preferred stock was issued to Henry Sklar. Aproximately 30 days after the issuance of the 100 shares of preferred stock to Sklar, he transferred those shares of stock to petitioner. Sklar had no interest in the retail shoe business. During 1948, the Pliner Company needed additional funds, and petitioner refinanced his home and turned over $3,000 of the money received in such refinancing to the Pliner Company for which 30 shares of common stock were issued to him. At all times from the date of the incorporation of the Pliner Company throughout the taxable year here involved, petitioner owned all of the outstanding and issued shares of common stock of that company. From the date of incorporation of Pliner Company until August 1, 1953, the only preferred stock of that company issued and outstanding *133 was the 100 shares of preferred stock originally issued to Sklar and transferred approximately 30 days thereafter to petitioner. From the time of Pliner Company's incorporation through 1953, petitioner had made a practice of borrowing funds from the corporation. On or about August 1, 1953, at petitioner's request, Pliner Company redeemed 50 shares of its $100 par preferred stock then standing on its records in petitioner's name and reduced petitioner's personal loan account by the amount of $5,000. The men's department opened in one of petitioner's stores in 1948 did not develop to be a profitable operation, and prior to August 1, 1953, Pliner Company decided to abandon the department, and the inventory of men's shoes was sold off slowly over a period of time. From the time of the incorporation of Pliner Company in 1946, petitioner's authorized salary was $20,000 a year, but for the years prior to 1953 petitioner was paid a salary of $15,000 a year. Petitioner took the smaller salary because of the need of the corporation for working capital. In 1953 petitioner received a salary of approximately $20,000 from Pliner Company and paid $5,000 of such amount to Sklar to reduce the *134 loan payable to him. Petitioner is still indebted to Sklar in the sum of $5,000, which indebtedness is secured by a second mortgage on petitioner's home. Several years after the taxable year here involved, the remaining 50 shares of the preferred stock which had originally been issued to Sklar were transferred as a bonus to an individual who at that time had purchased a 50 percent interest in Pliner Company. Petitioner no longer owns any stock in Pliner Company, having disposed of his interest therein in June of 1959 at a sacrifice price because the corporation was unable at that time to meet its obligations as they matured. As of February 1, 1953, and January 31, 1954, approximately two-thirds of the assets of Pliner Company consisted of inventories. Pliner Company had to borrow money each season from the bank in order to maintain inventories. Pliner Company was always a growing and expanding business in terms of its sales volume. It was at all times expanding its inventories and stores and opening new stores. During its fiscal year ended January 31, 1954, Pliner Company's inventory increased by more than $10,000 and its long-term indebtedness increased by $6,000. Pliner Company *135 paid no dividends on either its common or preferred stock from the date of its incorporation through 1953. Pliner Company's surplus account was in excess of $5,000 on August 1, 1953, when it redeemed 50 shares of its preferred stock. For its fiscal year ended January 31, 1954, Pliner Company had earnings of $9,674.86 and an earned surplus as of the end of the year of $42,201.51. In the notice of deficiency respondent increased petitioners' income by $5,000 with the explanation that their gross income as reported had been increased by such amount representing a taxable dividend received in redemption of certain shares of capital stock of the Pliner Company. The redemption by Pliner Company on August 1, 1953, of 50 shares of its preferred stock held by petitioner was a distribution essentially equivalent to a dividend. Some of the facts have been stipulated and are found accordingly. Opinion Whether a distribution by a corporation in redemption of stock is essentially equivalent to a taxable dividend with the meaning of section 115(g) of the Internal Revenue Code of 1939[1] is basically a question of fact. From the many cases dealing with this question certain principles as *136 to the circumstances to be examined have developed. These include the following: Whether the distribution resulted in a substantial change in ownership or control; whether there was a bona fide business purpose; whether there was any contraction of the corporate business; whether the action leading to the distribution was initiated by the corporation or by the shareholders; whether there had been a past policy of payment of dividends; whether there were earnings or profits available for payment of a dividend; and whether the effect on corporate finances was the same as would have resulted from the declaration of a regular dividend. Genevra Heman, 32 T.C. 479 (1959), affd. 283 F. 2d 227 (C.A. 8, 1960), and Ferro v. Commissioner, 242 F. 2d 838 (C.A. 3, 1957), affirming a Memorandum Opinion of this Court. *137 In the instant case the petitioner was the sole stockholder of the business and it was his action that initiated the reduction of his indebtedness to the corporation in redemption of his stock. In the year of the redemption the corporation had earned surplus and current earnings, both in excess of the amount paid in redemption of the stock. A reduction of petitioner's indebtedness to the corporation by crediting $5,000 to his loan account in redemption of 50 shares of his preferred stock has not been shown to have had any different effect on the corporate finances than would have the declaring of a dividend and crediting the amount to petitioner's loan account. No dividend had ever been paid by the corporation. Petitioner's primary contention is that there was a contraction in the corporate business and that the $5,000 redemption of stock was because of this contraction. Petitioner argues that the preferred stock which was originally issued to Sklar was for a loan, that it was related to the loan and should properly have been redeemed as the loan was repaid. Petitioner points to the fact that at about the time of the redemption of the stock it had been decided to close the men's *138 department, the opening of which occasioned the borrowing of the $10,000 from Sklar. From this petitioner concludes that the redemption of the stock was because of the repayment of the loan to Sklar and was not essentially equivalent to a dividend. The facts do not support petitioner's contentions. It is true that Sklar was given a joint note of the corporation and petitioner for the $10,000 which originally was shown as a loan to the corporation. However, shortly thereafter when it was felt that the capital structure of the corporation needed strengthening this $10,000 was placed into the capital of the corporation and 100 shares of preferred stock issued to Sklar. The record is not clear that Sklar at that time specifically released the corporation of its obligation to him on the note, but from the ensuing circumstances it is apparent that Sklar thereafter looked to the petitioner for repayment of the loan. Petitioner, after the transfer of the 100 shares of preferred stock to him, was, as he had been prior to the issuance of this stock to Sklar, the sole stockholder of the corporation. At about the time the $10,000 was capitalized, petitioner paid an additional $3,000 into the *139 capital of the corporation for which he received common stock. All these facts indicate that the $10,000 was paid in by petitioner to the corporation as capital. The facts surrounding the repayment of the $5,000 to Sklar do not support petitioner's contention that such repayment was related to the redemption of the 50 shares of preferred stock. In the year of this repayment petitioner drew approximately $5,000 more salary than he had received in prior years and in his testimony he stated that he used $5,000 of his 1953 salary to pay back Sklar and to reduce his indebtedness to him. Under these circumstances the reduction of petitioner's loan account by $5,000 in redemption of 50 shares of the preferred stock constituted an additional $5,000 received by petitioner from the corporation over the amounts received by him in prior years. It was not this credit but the $5,000 additional salary which petitioner used to repay Sklar. The facts as a whole indicate that the substance of this entire transaction was that petitioner borrowed $10,000 from a personal friend to invest in the business of Pliner Company. Even though both the corporation and petitioner signed the note, it is clear from *140 petitioner's testimony that Sklar at all times looked to petitioner for repayment. It is true that sometime prior to the date of the redemption of the 50 shares of petitioner's preferred stock, Pliner Company had decided to discontinue its men's shoe department. However, the facts do not support petitioner's contention that the business of the company was contracted because of this decision. Actually, the company's business was expanding at this time and was in need of money for such expansion. The dropping of the men's shoe department was merely a change in the nature of the business which did not cause the corporation to need less funds for operating. At the time of the stock redemption the corporation needed more operating funds than it had previously needed as shown by its increase in long-term indebtedness. The facts of the instant case disclose no business purpose for the redemption of the stock as do the cases cited by petitioner in which stock redemptions were held not to be essentially equivalent to the distribution of a dividend. Cf. Harry A. Koch, 26 B.T.A. 1025 (1932); George A. Lembcke, 33 B.T.A. 700 (1935); Bona Allen, Jr., 41 B.T.A. 206 (1940); *141 and John L. Sullivan, 17 T.C. 1420 (1952), affd. 210 F. 2d 607 (C.A. 5, 1954). Nor is the instant case comparable to Cobb v. Callan Court Co., 274 F. 2d 532 (C.A. 5, 1960) relied upon by petitioner. In Cobb v. Callan Court Co., supra, the preferred stock involved had been originally issued in a reorganization for the benefit of the corporation in exchange for bonds and advances to the old corporation with the declared purpose of redeeming it. In the instant case when the indebtedness was converted to preferred stock in order to strengthen the capital structure of the corporation, there is no evidence that any declaration of purpose to redeem the preferred stock was made by the corporation. The facts of the instant case bring it within the circumstances which have been held to support the conclusion that the distribution was essentially equivalent to the declaration of a dividend. Cf. Bertram Meyer, 5 T.C. 165 (1945), revd. on other grounds 154 F. 2d 55 (C.A. 3, 1946); Estate of Charles D. Chandler, 22 T.C. 1158 (1954), affd. 228 F. 2d 909 (C.A. 6, 1955); and James F. Boyle, 14 T.C. 1382 (1950), *142 affd. 187 F. 2d 557 (C.A. 3, 1951). Based on all of the facts of record, we hold the redemption of the stock here made to be essentially equivalent to the distribution of a dividend within the meaning of section 115(g) of the Internal Revenue Code of 1939. Decision will be entered for respondent. Footnotes
1. Sec. 115(g) Redemption of Stock. - (1) In general. - If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.↩