### WALL v. UNITED STATES.
### No. 5634.

Circuit Court of Appeals, Fourth Circuit.

Nov. 10, 1947.

H. M. Woodward, of Norfolk, Va., for appellant.

Robert R. Reynolds, Jr., Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Helen R. Carloss and Robert N. Anderson, Sp. Asst. to Atty. Gen., and Harry H. Holt, Jr., U. S. Atty., and Walkley E. Johnson, Asst. U. S. Atty., both of Norfolk, Va., on the brief), for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This is an action for the recovery of income tax paid by the plaintiff pursuant to a

deficiency assessment for the year 1939. The District Court denied recovery and the plaintiff appeals.

Rosedale Dairy Company, Incorporated, herein called Rosedale, is a Virginia corporation with its principal office in Norton, Virginia. It was incorporated in 1922 with a minimum capital stock of $10,000 and a maximum capital stock of $25,000, composed of common stock of the par value of $100 per share. One hundred and twenty shares were issued and are still outstanding. Prior to 1933, the taxpayer, Wall, owned or controlled 60 shares and the remaining 60 shares were owned or controlled by one Moses, who died in 1933. The latter stock was then purchased by G. C. Coleman, who was the principal owner of the Britcherd Dairy Company, Rosedale's chief competitor. This situation continued for several years, but it was not satisfactory to Wall; and accordingly, he initiated negotiations which culminated in an agreement executed by Wall and Coleman August 28, 1937. By this agreement Coleman agreed to sell to Wall for the sum of $71,700: (1) his stock in Rosedale, (2) a claim for $10,000 which Moses had against Rosedale and which Coleman had purchased from his executor, and (3) a parcel of real estate valued at $4,700. Wall paid $6,700 cash and agreed to pay $5,000 annually for nine years, and $20,000 in the tenth year. To cover the deferred payments he executed and delivered to Coleman thirteen promissory notes each for $5,000. The price paid for the stock thus amounted to $57,000; and Wall transferred the stock to two trustees to be held by them as security for the notes. While title to the stock was in the trustees, Wall retained the right to vote the stock, subject to the limitation that he could not vote it so as to jeopardize its value as security either by authorizing the issuance of additional stock by Rosedale or by selling the assets of Rosedale.

Wall personally made the down payment of $6,700, and also paid the first note for $5,000 which matured September 1, 1938. However, on January 3, 1939, Wall entered into an agreement with Rosedale whereby the latter agreed to pay the remaining notes as they matured, and Wall, in turn, transferred to Rosedale his equity in the stock then held by the trustees, and thereupon Rosedale entered the stock on its books as treasury stock and charged itself with the assumed liability in the sum of $60,000. Rosedale paid Wall's second note for $5,000 when it matured in 1939 out of its surplus, and has continued to meet the notes as they matured thereafter. Coleman was not a party to the agreement between Wall and Rosedale, and Wall was not relieved of his personal liability on the notes by virtue of that agreement.

The Commissioner of Internal Revenue treated the payment by Rosedale of Wall's note for $5,000 in 1939 as income in that amount to Wall, and assessed a deficiency on that basis. The Commissioner relied on Section 115(g) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 115(g), which provides that if a corporation cancels or redeems its stock in such manner as to make the distribution and cancellation or redemption essentially equivalent to the distribution of a taxable dividend to the stockholder, the amount so distributed shall be treated as a taxable dividend. The District Judge agreed with this view and entered judgment for the United States.

■ The controlling fact in this situation was that Wall was under an obligation to pay Coleman $5,000 in the tax year and that Rosedale paid this indebtedness for Wall out of its surplus. It cannot be questioned that the payment of a taxpayer's indebtedness by a third party pursuant to an agreement between them is income to the taxpayer. Douglas v. Willcuts, 296 U.S. 1, 9, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391; United States v. Boston & Maine R. Co., 279 U.S. 732, 49 S.Ct. 505, 73 L.Ed. 929; Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918. The transaction is regarded as the same as if the money had been paid to the taxpayer and transmitted by him to the creditor; and so if a corporation, instead of paying a dividend to a stockholder, pays a debt for him out of its surplus, it is the same for tax purposes as if the corporation pays a dividend to a stockholder, and the stockholder then utilizes it to pay his debt.

■ The taxpayer does not dispute this well-settled principle but contends that it is

not applicable here for a number of reasons. He says, in the first place, that he received no taxable gain from his dealings with Coleman and the corporation since his resulting stock interest, although amounting to all the stock of the corporation, was of less value than the 50 per cent. stock interest which he owned before Coleman was bought out. This is true because the price paid Coleman for his 50 per cent. interest exceeded one-half the value of the company's assets. It is therefore argued that the taxpayer did not realize any taxable gain at the time, and that until he finally disposes of his holdings, it will not be known whether or not he will make a gain or loss on his deal. While this statement may be true, it is entirely beside the point. We are not now concerned with the broad question whether the business in which the taxpayer is engaged will ultimately result to his advantage and show a profit on his investment when it is finally liquidated, but with the much narrower question whether in 1939 the taxpayer in legal effect received a dividend from the corporation through the payment by it of the $5,000 note to Coleman.

■ The taxpayer next contends · that under the 1939 agreement he transferred to the corporation the equity he had acquired in the Coleman stock and consequently there was consideration for the discharge of his obligation by Rosedale. But this argument is not tenable for the test is not the number of shares held by the stockholder, but rather his proportional interest in the corporation. Eisner v. MacComber, 252 U.S. 189, 40 S. Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570. Wall owned or controlled 100 per cent. of Rosedale prior to his transfer of his · equity in the stock to Rosedale, and he continued to own or control 100 per cent. of Rosedale's outstanding stock after the transfer. His proportional interest in Rosedale, therefore, remained the same and it follows that the transfer of his equity in the stock to Rosedale cannot be regarded as consideration for the payment· of his personal debt by Rosedale. If Wall· had paid for the stock in cash and then sold the stock to Rosedale for the same price, he would clearly have been taxable on the latter transaction under Section 115(g) if the payment by Rosedale was made from surplus. Brown v. Commissioner, 3 Cir., 79 F.2d 73; Hyman v. Helvering, 63 App.D.C. 221, 71 F.2d 342. The case at bar is not distinguishable in principle.

■ The taxpayer also contends that the statute does not fit his case because the Coleman stock was neither cancelled nor redeemed but kept alive in the company's treasury so that, if need be, it could be re-issued. The proper method of treating or accounting for the stock of a corporation purchased by it and kept in its treasury has been the subject of much discussion; but it is clear that for tax purposes, the question whether such stock may be regarded as redeemed should be solved by an examination of the attendant circumstances. R. J. Reynolds Tobacco Co. v. Commissioner, 4 Cir., 97 F.2d 302. As a practical matter, such shares are redeemed in the sense that they no longer constitute any liability of the corporation but represent nothing more than an opportunity to acquire new assets by a reissuance. Borg v. International Silver Co., 2 Cir., 11 F.2d 147, 150. We have no difficulty in reaching the conclusion in this case that the shares were redeemed in the statutory sense. They were purchased from Wall who was in effect the sole stockholder of the corporation to relieve him of his obligations to Coleman, and when they were acquired by the corporation, they ceased to have any present significance or vitality. In the words of the statute the distribution and redemption were essentially equivalent to the distribution of a taxable dividend. If it should be held that taxpayers can avoid the terms of the statute by the simple device of selling their stock to the corporation and having it held as treasury stock, the purpose of the statute to prevent the evasion of taxes upon corporate dividends would be completely frustrated. See Robinson v. Commissioner, 5 Cir., 69 F.2d 972; cf. Alpers v. Commissioner, 2 Cir., 126 F.2d 58; Kirschenbaum v. Commissioner, 2 Cir., 155 F.2d 23.

■ The final contention of the taxpayer is that the two transactions, that is, the transfer from Coleman to Wall in 1937 and the transfer from Wall to Rosedale in 1939, should be treated as parts of a single transaction whereby Coleman sold his stock

to Rosedale without the intervention of Wall. This, it is said, is the true meaning of what the parties did and hence Wall incurred no tax liability; and we are asked to reach this conclusion since taxation is a practical matter which requires that regard be had to the substance rather than to the form of the taxpayer's acts. This argument must also be rejected. In the first place, the effect of the two transactions is not identical to the situation that would have arisen had the stock been purchased directly by Rosedale, for in that event no personal obligation would have been incurred by Wall. As it actually was, he did incur such an obligation to Coleman, and it is precisely the payment of that obligation by Rosedale which constitutes income to him. Wall deliberately elected to attain his objective by two distinct transactions and there is no evidence that he was merely acting as an agent for Rosedale when he made the purchase. As was stated in Woodruff v. Commissioner, 5 Cir., 131 F.2d 429, 430, where a similar contention was advanced and rejected, "if a taxpayer has two legal methods by which he may attain a desired result, the method pursued is determinative for tax purposes without regard to the fact that different tax results would have attached if the alternative procedure had been followed." This rule is but a logical corollary to the principle that a transaction, not taxable per se, is not taxable solely because the same goal could have been attained by a different transaction which would have been taxable. Commissioner v. Gilmore's Estate, 3 Cir., 130 F.2d 791; Commissioner v. Kolb, 9 Cir., 100 F.2d 920.

The taxpayer relies in this connection on Fox v. Harrison, 7 Cir., 145 F.2d 521, where the corporation was owned or controlled by two stockholders, one of whom bought out the other and thereafter sold part of the purchased stock to the corporation at the same price which he had paid for it. The evidence in that case, however, disclosed, and the District Judge found, that the corporation intended to redeem the stock in question, and that the taxpayer merely acted as its agent, because the corporation was financially unable to consummate the purchase at the time. In our case, on the other hand, the District Judge has found that Wall was not acting on behalf of Rosedale but was induced by personal considerations to purchase the Coleman stock on his account. There is abundant evidence to support this finding. There was no pressure upon the corporation to buy the Coleman stock in 1937 and no lack of corporate funds with which to make the purchase if it had been deemed desirable. It was obviously to Wall's advantage to eliminate the influence of the competitor and to secure complete control for himself. Since more than a year separated the two transactions, and there is no affirmative evidence that Wall was acting as the agent of the corporation, there is no ground upon which a reversal of the judge's conclusion could be based. The two transactions cannot be considered as one, and the judgment of the District Court is affirmed.