THOMAS J. AND ELEANORE G. FRENCH, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

RUTH E. GEBHARDT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 54417, 54418.   Filed May 15, 1956.

*John C. Reid, Esq.,* for the petitioners.
*Paul E. Waring, Esq.,* for the respondent.

266

## OPINION.

JOHNSON, *Judge:* The respondent has determined that the cancellation of petitioners' notes to Cooper-Smith and the concurrent retirement by the corporation of a part of petitioners' stock occurred at such time and in such manner as to be essentially the equivalent of a taxable dividend within the meaning of section 115 (g) of the Internal Revenue Code of 1939, and in support of his determination relies principally upon *Wall* v. *United States*, (C. A. 4, 1947) 164 F. 2d 462; *Lowenthal* v. *Commissioner*, (C. A. 7, 1948) 169 F. 2d 694, affirming a Memorandum Opinion of this Court, and *Woodworth* v. *Commissioner*, (C. A. 6, 1955) 218 F. 2d 719, affirming a Memorandum Opinion of this Court. The cancellation of stockholder indebtedness under circumstances substantially similar to those in the instant case was held in the *Woodworth* case to fall within the ambit of section 115 (g). In that case, the principal shareholder of the Buckeye Stamping Company executed a written agreement to sell her shares in the corporation to the members of a purchasing syndicate. Thereafter, the members of the syndicate were able to acquire the shares of the minority stockholders. Subsequently, the principal shareholder and her attorney resigned as directors and a new board was elected, consisting principally of syndicate members. This board ratified the purchase of the majority block of shares *by Buckeye*, and payment was made by a cashier's check to Buckeye (representing the proceeds of a sale of some securities and other assets held by Buckeye) which was endorsed to the vendor, and two other cashier's checks which apparently represented the balance of Buckeye's quick assets, plus the proceeds of two loans to Buckeye. The vendor surrendered her shares to the corporation, which subsequently issued such shares to the syndicate members in exchange for their notes. The syndicate members, over the course of the next 2 years, reduced their note obligations at various times, but then, upon advice of counsel that there was some question of the legality of issuing shares for notes under the laws of Ohio, each surrendered 75 per cent of his shares of stock to the corporation, which thereupon canceled all the notes due from them. Upon these facts, it was held that the syndicate members had received the equivalent of a dividend under section 115 (g).[1]

In *Lowenthal* v. *Commissioner*, *supra*, after acquiring most of the shares in a corporation, the three purchasers borrowed money from the

---

[1] The finding of this Court that the vendor in fact sold her stock to the syndicate, and not to the corporation, serves to remove a seeming distinction between that case and the instant one.

corporation to repay their respective debts to the vendor. The cancellation by the corporation of the stockholders' indebtedness to it upon proportionate surrender of stock by the shareholders was held to fall within section 115 (g).

Petitioners raised a number of arguments to the effect that section 115 (g) has no application as to them. They argue that, on the facts before us, we should find that they purchased a corporation which had been drained of cash by the vendors, that they merely acquired the operating assets of Cooper-Smith, and that, at the time of the purchase, they thought they were acquiring the assets of the corporation for $20,000 and that the notes executed by them to Cooper-Smith were just "paper work" incident to the acquisition, and consequently were of no particular significance. They argue that if they did not in fact borrow money from the corporation in 1948, there can have been no taxable cancellation of indebtedness in 1950. We have considered all the facts—that the will of C. Arch Smith permitted petitioners to purchase the stock of Cooper-Smith at book value, and that such book value was $86,665.51 at the time of the purchase, that the contract of purchase recited a consideration of $43,332.76 due from each purchaser, that petitioners signed the minutes of the meeting of the board of directors authorizing the loans to themselves, and that they executed notes to the corporation which were carried as assets on the corporate books for 2½ years thereafter—and we have made an ultimate finding that petitioners in fact incurred obligations to the corporation, which finding is dispositive of this argument. Petitioners testified that they did not intend to repay their debts to the corporation, but the intent not to repay a similar obligation did not prevent the application of section 115 (g) in *Lowenthal* v. *Commissioner*.

Petitioners argue that they were mere conduits for transmitting the cash from the corporation to the vendors at the time of the sale, and rely upon *Minnesota Tea Co.* v. *Helvering*, 302 U. S. 609. There, a corporation transferred some of its assets to another corporation in exchange for stock and cash. Under section 112 (d) of the Revenue Act of 1928, cash or other property received by a corporation in a reorganization and distributed by it pursuant to the plan of reorganization was not taxable to the corporation. The corporation distributed the cash to its shareholders with the proviso that the shareholders pay certain of its outstanding obligations. In holding that, to the extent the cash distributed to the shareholders was used by them to discharge corporate obligations, it was income to the corporation, the Supreme Court said that the shareholders were a mere conduit between the corporation and its creditors. In the instant case, however, the cash loaned by Cooper-Smith to petitioners was used by them to discharge their own obligations, not those of the corporation.

Petitioners urge us to look through form to substance. They argue that "What actually happened in the present case is the same thing which happened in *Zenz* v. *Quinlivan*, 213 F. 2d 914 * * *." In *Zenz* v. *Quinlivan*, the sole shareholder in a corporation sold part of her stock to a purchaser, and at some time thereafter the corporation purchased her remaining stock. The Court of Appeals for the Sixth Circuit held that this redemption was not essentially the equivalent of a taxable dividend to the vendor because the redemption completely extinguished the vendor's interest in the corporation. In the instant case, petitioners did not purchase only a part of the vendor's stock, and the corporation did not redeem the rest of it; petitioners bought all of such stock. *Zenz* v. *Quinlivan* is not in point.

A taxpayer is at liberty to minimize his taxes in any way which the law permits, *Pat O'Brien*, 25 T. C. 376, but once he has selected a legal means of achieving a certain purpose, the form which he has selected is generally determinative of the tax consequences of his actions, *Goetze Gasket & Packing Co.*, 24 T. C. 249; *Woodruff* v. *Commissioner*, 131 F. 2d 429. After having discussed *Zenz* v. *Quinlivan* and having concluded that the taxpayers in the case at bar could so have arranged their affairs as to bring themselves within the rule of the *Zenz* case, the court said, in *Woodworth* v. *Commissioner*, *supra*, that

it can be argued that to permit the decision of the Tax Court to stand is to permit form to triumph over substance. Yet, to the extent here implied, it is form which often must prevail, when the delicate question involved is whether the extraction of a corporation's earned surplus has been accomplished at less than the rates taxed upon ordinary income. * * *

Upon consideration of all the facts, and particularly the facts that the cancellations of indebtedness herein effected a distribution to petitioners in proportion to their shareholdings, and that there was no evidence of contraction of the business after the redemption (see *J. Paul McDaniel*, 25 T. C. 276), we have concluded and found as a fact that the 1950 transactions herein were essentially the equivalent of taxable dividends under section 115 (g).

Petitioners point to the fact that the minutes of the November 14, 1950, directors' meeting authorizing the redemption and cancellation indicate that the purpose of canceling the stockholders' notes in exchange for stock was to improve the corporation's credit position, and that this evidences a business purpose for the redemption. However, there is no evidence that the corporation was not in fact able to obtain credit with the stockholders' notes outstanding; those same minutes of the directors' meeting recited that the corporation had negotiated a loan with the Second National Bank. There is no proof of business purpose for the redemption sufficient to overcome the presumptive correctness, that this was a section 115 (g) redemption, attaching to re-

spondent's statutory notices of deficiency. Petitioners also point to the fact that the redeemed stock was held as treasury stock and urge that this factor should prevent the application of section 115 (g). However, after the redemption, the petitioners retained their identical proportional interests in the corporation. Under such circumstances, we do not regard the fact that the stock was carried as treasury stock as of any particular significance. *Wall* v. *United States, supra;* cf. *Smith* v. *United States,* (Ct. Cl.) 130 F. Supp. 586.

*Decisions will be entered for the respondent.*