THOMAS G. LEWIS AND FLORENCE BEYER LEWIS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CHARLES O. WALGRAN AND EDNA G. WALGRAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 70795, 70796. Filed October 20, 1960.

*C. Walter Randall, Jr., Esq.,* for the petitioners.
*Frederick A. Levy, Esq.,* for the respondent.

OPINION.

Raum, *Judge:* Over a period of years, beginning prior to 1943 and continuing until her death in 1954, Eva L. Beyer owned 156 shares out of a total of 283 shares of stock of Beyer & Fortner, Inc. The remaining shares were owned by her three daughters or their husbands in unequal amounts. She was president of the corporation, but ceased taking salary in 1943 by reason of a temporary decline in the corporate business due to the war. Her poor health prevented her from playing any active part in the enterprise after 1947, and she never did receive any salary from 1943 until her death. Her needs for living expenses during this period were met by loans from the corporation. The amounts were modest, aggregating $20,435.54 over the entire period of some 11 or 12 years. No dividends were paid at any time, although the corporation did have accumulated earnings and profits. At her death the liquidation of her indebtedness to the corporation presented a serious problem, since the value of her estate, apart from the 156 shares, was considerably less than the amount of the indebtedness. The problem was solved by having the corporation redeem 51 of her shares valued at a price that was sufficient to repay the loans; the remaining 105 shares were then promptly distributed in equal amounts of 35 shares to each of the three daughters. No other shares were redeemed and the total holdings of the families of the three daughters, being unequal prior to the redemption and distribution, remained unequal thereafter, but in different proportions. The Commissioner determined that on these facts there was a redemption essentially equivalent to a dividend under sections 301 and 302 of the 1954 Code.

Had this case arisen under the predecessor provisions of the 1939

Code,[1] it might have been possible to find that the redemption was not essentially equivalent to the distribution of a taxable dividend, in view of the fact that shares of only one stockholder were redeemed, resulting in a disturbance of the proportionate holdings of the various stockholders. Although such a dislocation of the relative holdings would not necessarily be fatal to the Government's position, it would nonetheless be a factor, which when considered against the factual background of this case, could tip the scales in petitioners' favor.

However, the problem before us must be considered in terms of the 1954 Code. Pertinent excerpts from sections 301 and 302 are set forth in the margin.[2] The general statutory framework, with the many confusing cross references, makes the study and application of these provisions a most exasperating task. Nevertheless, after threading our way through these provisions we finally come to rest, at least temporarily, in section 302(b)(1), which, *in general*, was intended to incorporate the preexisting law embodied in section

[1] I.R.C. 1939:
SEC. 115. DISTRIBUTIONS BY CORPORATIONS.
(g) REDEMPTION OF STOCK.—
(1) IN GENERAL.—If a corporation cancels or redeems its stock * * * at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

[2] I.R.C. 1954:
SEC. 301. DISTRIBUTIONS OF PROPERTY.
(a) IN GENERAL.—Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c).
*     *     *     *     *     *     *
(c) AMOUNT TAXABLE.—In the case of a distribution to which subsection (a) applies—
(1) AMOUNT CONSTITUTING DIVIDEND.—That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income.
SEC. 302. DISTRIBUTIONS IN REDEMPTION OF STOCK.
(a) GENERAL RULE.—If a corporation redeems its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock.
(b) REDEMPTIONS TREATED AS EXCHANGES.—
(1) REDEMPTIONS NOT EQUIVALENT TO DIVIDENDS.—Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend.
(2) SUBSTANTIALLY DISPROPORTIONATE REDEMPTION OF STOCK.—* * *
(3) TERMINATION OF SHAREHOLDER'S INTEREST.—* * *
(4) STOCK ISSUED BY RAILROAD CORPORATIONS IN CERTAIN REORGANIZATIONS.—* * *
(5) APPLICATION OF PARAGRAPHS.—In determining whether a redemption meets the requirements of paragraph (1), the fact that such redemption fails to meet the requirements of paragraph (2), (3), or (4) shall not be taken into account. * * *
(c) CONSTRUCTIVE OWNERSHIP OF STOCK.—
(1) IN GENERAL.—Except as provided in paragraph (2) of this subsection, section 318(a) shall apply in determining the ownership of stock for purposes of this section.
(2) * * * [Not relevant to this case.]
(d) REDEMPTIONS TREATED AS DISTRIBUTIONS OF PROPERTY.—Except as otherwise provided in this subchapter, if a corporation redeems its stock (within the meaning of section 317(b)), and if subsection (a) of this section does not apply, such redemption shall be treated as a distribution of property to which section 301 applies.
(e) CROSS REFERENCES.—* * *

115(g)(1) of the 1939 Code.[3] The words "in general" must be stressed, for the new provisions were not made fully coextensive with the old. Not only did paragraphs (2), (3), and (4) of the new section 302(b) single out and remove three specific types of redemptions from the more general test contained in section 302(b)(1) and the old section 115(g)(1),[4] but section 302(c) of the 1954 Code made the constructive ownership rules of section 318(a) applicable (with certain exceptions not pertinent here) to the redemption tests. Thus, a new dimension has been added to the 1939 Code approach, and it is that new dimension, based upon section 318(a), that moves us to sustain the Commissioner herein. The pertinent provisions of that section are set forth below.[5]

[3] See S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 233–234:

Paragraph (1) of subsection (b) provides that subsection (a) will apply if the redemption is not essentially equivalent to a dividend.

The test intended to be incorporated in the interpretation of paragraph (1) is *in general* that currently employed under section 115(g)(1) of the 1939 Code * * *.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Unlike the House bill, however, section 302 does not provide specific statutory guides governing the tax consequences of every stock redemption. In lieu of the approach in the House bill, your committee intends to revert in part to existing law by making the determination of whether the redemption is taxable as a sale at capital gain rates or as a dividend at ordinary income rates dependent, except where it is specifically provided otherwise, upon a factual inquiry * * *.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Subsection (b) of Section 302 states three conditions in paragraphs (1), (2), (3), and (4), the satisfaction of any one of which will result in the *treatment of the redemption as a distribution in full or part payment in exchange for the stock. In general,* under this subsection your committee intends to incorporate into the bill existing law as to whether or not a [redemption] is essentially equivalent to a dividend under section 115(g)(1) of the 1939 Code, and in addition to provide three definite standards in order to provide certainty in specific instances. [Emphasis supplied.]

[4] The parties agree that the redemption in this case does not qualify under paragraphs (2), (3), or (4), and that the case can be decided in petitioners' behalf only under paragraph (1).

[5] I.R.C. 1954:

SEC. 318. CONSTRUCTIVE OWNERSHIP OF STOCK.

(a) GENERAL RULE.—For purposes of those provisions of this subchapter to which the rules contained in this section are expressly made applicable—

　(1) MEMBERS OF FAMILY.—

　　(A) IN GENERAL.—An individual shall be considered as owning the stock owned, directly or indirectly, by or for—

　　　(i) his spouse * * * and

　　　(ii) his children, grandchildren, and parents.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

　(2) PARTNERSHIPS, ESTATES, TRUSTS, AND CORPORATIONS.—

　　(A) PARTNERSHIPS AND ESTATES.—Stock owned, directly or indirectly, by or for a partnership or estate shall be considered as being owned proportionately by its partners or beneficiaries. Stock owned, directly or indirectly, by or for a partner or a beneficiary of an estate shall be considered as being owned by the partnership or estate.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

　(4) CONSTRUCTIVE OWNERSHIP AS ACTUAL OWNERSHIP.—

　　(A) IN GENERAL.—Except as provided in subparagraph (B), stock constructively owned by a person by reason of the application of paragraph (1), (2), or (3) shall, for purposes of applying paragraph (1), (2), or (3), be treated as actually owned by such person.

　　(B) MEMBERS OF FAMILY.—Stock constructively owned by an individual by reason of the application of paragraph (1) shall not be treated as owned by him for purposes of again applying paragraph (1) in order to make another the constructive owner of such stock.

Applying the constructive ownership rules of section 318(a), we must conclude that the stock owned by the husbands of the three daughters is to be attributed to the daughters themselves under paragraph (1)(A)(i); that the stock thus attributed to them must be treated under paragraph (4) as "actually owned by" them; and that therefore their own stock plus the stock thus attributed to them must in turn be attributed to the estate under the second sentence of paragraph (2)(A). As a consequence of the foregoing, the estate must be treated as owning all the shares that were really owned by the daughters and their husbands, with the net result that the estate is to be regarded as owning 100 per cent of the stock.

Accordingly, we are required by the 1954 Code to appraise the facts of this case in the light of an assumption that the estate owned all of the stock. And, with that assumption in mind, we conclude that the redemption herein was essentially equivalent to a distribution of a dividend. For, the picture thus presented is one of corporate withdrawals from time to time by a dominant stockholder for her needs, where the corporation has never declared a dividend although having sufficient accumulated earnings and profits to do so, followed finally by a cancellation of the indebtedness in exchange for stock upon the death of that stockholder when only her estate had an interest in the enterprise, when such cancellation and redemption could not possibly have any economic effect upon any stockholder-corporation relationship, and when there was no plan either to contract the corporate enterprise or to use the redeemed shares in any manner for a corporate purpose. In these circumstances, and taking into account all other evidence before us, we conclude and find that the redemption herein was essentially equivalent to a dividend. Cf. *Ferro* v. *Commissioner*, 242 F. 2d 838 (C.A. 3), affirming T.C. Memo. 1956–94; *Genevra Heman*, 32 T.C. 479; *Samuel H. Kessner*, 26 T.C. 1046, affirmed per curiam 248 F. 2d 943 (C.A. 3); *James F. Boyle*, 14 T.C. 1382, affirmed 187 F. 2d 557 (C.A. 3), certiorari denied 342 U.S. 817.

*Decisions will be entered under Rule 50.*