ALOYSIUS J. McGINTY AND ALICE B. McGINTY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84183.    Filed September 17, 1962.

*John J. McCall, Esq.*, for the petitioners.
*Eugene L. Wilpon, Esq.*, for the respondent.

## OPINION.

Raum, *Judge:* We hold that Berkshire's 1954 redemption of petitioner's 1,333⅓ shares of its stock in consideration of the discharge of the $40,000 note held by it was "essentially equivalent to a dividend" within the meaning of section 302(b) of the 1954 Code.[1]  Pertinent statutory provisions are set forth in the margin.[2]  The fact that petitioner's wife was the maker of the note is of no consequence here.

---

[1] Accordingly, section 302(a) does not apply, and, pursuant to section 302(d), the redemption is to be treated as a "distribution of property to which section 301 applies." As a consequence the distribution constitutes a taxable dividend, in accordance with section 316, to the extent of available earnings and profits, which, in this case, amounted to $19,525.06.  See next footnote for the statutory provisions involved.

[2] SEC. 301. DISTRIBUTIONS OF PROPERTY.

(a) IN GENERAL.—Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c).

\* \* \* \* \* \* \*

(c) AMOUNT TAXABLE.—In the case of a distribution to which subsection (a) applies—

(1) AMOUNT CONSTITUTING DIVIDEND.—That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income.

SEC. 302. DISTRIBUTIONS IN REDEMPTION OF STOCK.

(a) GENERAL RULE.—If a corporation redeems its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock.

(b) REDEMPTIONS TREATED AS EXCHANGES.—

(1) REDEMPTIONS NOT EQUIVALENT TO DIVIDENDS.—Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend.

(2) SUBSTANTIALLY DISPROPORTIONATE REDEMPTIONS OF STOCK.—\* \* \*

(3) TERMINATION OF SHAREHOLDER'S INTEREST.—\* \* \*

(4) STOCK ISSUED BY RAILROAD CORPORATIONS IN CERTAIN REORGANIZATIONS.— \* \* \*

(5) APPLICATION OF PARAGRAPHS.—In determining whether a redemption meets the requirements of paragraph (1), the fact that such redemption fails to meet the requirements of paragraph (2), (3), or (4) shall not be taken into account. \* \* \*

\* \* \* \* \* \* \*

(d) REDEMPTIONS TREATED AS DISTRIBUTIONS OF PROPERTY.—Except as otherwise provided in this subchapter, if a corporation redeems its stock (within the meaning of section

She was plainly acting upon his behalf, and there is no contention to the contrary.

In substance petitioner, a minority stockholder in 1950, offered to purchase all the remaining outstanding Berkshire shares. His offer was accepted, and the purchase was made with funds lent by the corporation (which it in turn had borrowed). Some 4 years later petitioner turned in those shares to the corporation which extinguished the obligation on the note. At that time, in 1954, petitioner was the sole stockholder, both before and after the redemption of the 1,333⅓ shares, but after the redemption a $40,000 obligation was canceled. The situation is substantially the same as if the corporation had distributed $40,000 in cash to him and he had used the funds to discharge the debt. Cf. *Wall* v. *United States*, 164 F. 2d 462, 464 (C.A. 4).

The corporation had a surplus available for dividends in 1954; it had paid none since 1950; and there is no convincing evidence of any corporate business purpose for the redemption. We think the redemption was substantially equivalent to the payment of a dividend to the extent of accumulated earnings. *Wall* v. *United States, supra; Woodworth* v. *Commissioner*, 218 F. 2d 719 (C.A. 6), affirming a Memorandum Opinion of this Court; *Bradbury* v. *Commissioner*, 298 F. 2d 111 (C.A. 1) ; *Genevra Heman*, 32 T.C. 479, affirmed 283 F. 2d 227 (C.A. 8) ; *Thomas G. Lewis*, 35 T.C. 71; *Lowenthal* v. *Commissioner*, 169 F. 2d 694 (C.A. 7) ; *Thomas J. French*, 26 T.C. 263. Cf. *Schalk Chemical Co.*, 32 T.C. 879, 891–892, affirmed 304 F. 2d 48 (C.A. 9).

This case is unlike *Holsey* v. *Commissioner*, 258 F. 2d 865 (C.A. 3), relied upon by petitioner, where it was the corporation that pur-

---

317(b)), and if subsection (a) of this section does not apply, such redemption shall be treated as a distribution of property to which section 301 applies.

\* \* \* \* \* \* \*

SEC. 316. DIVIDEND DEFINED.

(a) GENERAL RULE.—For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders—

(1) out of its earnings and profits accumulated after February 28, 1913, or

(2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301 applies, such distribution shall be treated as a distribution of property for purposes of this subsection.

\* \* \* \* \* \* \*

SEC. 317. OTHER DEFINITIONS.

(a) PROPERTY.—For purposes of this part, the term "property" means money, securities, and any other property; except that such term does not include stock in the corporation making the distribution (or rights to acquire such stock).

(b) REDEMPTION OF STOCK.—For purposes of this part, stock shall be treated as redeemed by a corporation if the corporation acquires its stock from a shareholder in exchange for property, whether or not the stock so acquired is cancelled, retired, or held as treasury stock.

chased the stock of one of two stockholders, thereby enabling the other to become the sole stockholder. *Holsey* is thus distinguishable from the *Wall* case [3] which we regard as controlling here. The distinction was recognized by the Court of Appeals in the *Holsey* case, when it said (258 F. 2d at 868):

It is true that it has been held that a distribution by a corporation in redemption of stock which the taxpayer stockholder has a contractual obligation to purchase is essentially the equivalent of a dividend to him since it operates to discharge his obligation. Wall v. United States, 4 Cir., 1947, 164 F. 2d 462; Ferro v. Commissioner of Internal Revenue, 3 Cir., 1957, 242 F. 2d 838; Zipp v. Commissioner of Internal Revenue, 6 Cir., 1958, 259 F. 2d 119. But where, as here, the taxpayer was never under any legal obligation to purchase the stock held by the other stockholder, the Greenville Company, having merely an option to purchase which he did not exercise but instead assigned to the Holsey Company, the distribution did not discharge any obligation of his and did not benefit him in any direct sense.

Similarly, in *Milton F. Priester*, 38 T.C. 316, this Court, in applying *Holsey*, recognized the operative scope of the *Wall* case in the following language (p. 324):

Secondly, he [the Commissioner] advances the legal proposition, which is likewise undisputed, that if the Priester corporation had then employed its earned surplus to discharge said obligation of petitioner to Marjorie [the selling stockholder], without receiving adequate consideration therefor from petitioner, such action of the corporation would have effected a constructive distribution of a taxable dividend to petitioner, under the principle of *Wall* v. *United States*, 164 F. 2d 462 (C.A. 4). * * *

Petitioner argues that he could have achieved the same result by having had the corporation purchase the Berkshire shares directly from the testamentary trustees. However, the point is that he did not do so. The same contention was considered in *Woodworth* v. *Commissioner*, 218 F. 2d 719 (C.A. 6), affirming a Memorandum Opinion of this Court, where the taxpayers in effect borrowed money from a corporation to purchase the majority stockholder's stock, giving promissory notes to evidence such borrowing. They also purchased the outstanding minority interest. After making some payments on the notes the new stockholders surrendered a portion of their stock to the corporation which in turn canceled the notes. In holding that the discharge of the notes resulted in a taxable dividend to the stockholders, notwithstanding that the tax might have been avoided if the transaction had been carried out differently, the Court of Appeals stated (pp. 723–724):

Accepting as we do the Tax Court's finding that the syndicate members [the new stockholders] borrowed funds from Buckeye [the corporation] in 1943 to

---

[3] In *Wall*, the owner of 50 percent of certain corporate stock contracted to purchase the remaining 50 percent. He made several payments on the purchase money notes, but subsequently transferred the stock thus purchased to the corporation which assumed his remaining liability on the notes. It was held that the corporation's discharge of that indebtedness, out of surplus, was taxable to the stockholder as a dividend.

purchase Mrs. Derby's [majority stockholder's] shares, and that Buckeye forgave the remaining balance of this loan in 1945, the court's ultimate finding that the 1945 transaction was substantially equivalent to a dividend distribution would seem logically to follow. Lowenthal v. Commissioner, 7 Cir., 1948, 169 F. 2d 694; Wall v. United States, 4 Cir., 1947, 164 F. 2d 462; J. Natwick, 1937, 36 B.T.A. 866. Compare Fox v. Harrison, 7 Cir., 1944, 145 F. 2d 521.

It is true that the syndicate members could have achieved their objective, yet completely avoided the tax liability here imposed, simply by their purchase of the two hundred shares owned by the minority shareholders, followed by Buckeye's redemption of all Mrs. Derby's stock. We can assume that if the transaction had been cast in that form neither petitioners nor Mrs. Derby would have been charged with the receipt of ordinary income. Cf. Zenz v. Quinlivan, 6 Cir., 1954, 213 F. 2d 914.

That being so, it can be argued that to permit the decision of the Tax Court to stand is to permit form to triumph over substance. Yet, to the extent here implied, it is form which often must prevail, when the delicate question involved is whether the extraction of a corporation's earned surplus has been accomplished at less than the rates taxed upon ordinary income. Cf. Chamberlin v. Commissioner, 6 Cir., 1953, 207 F. 2d 462. "If a taxpayer has two legal methods by which he may attain a desired result, the method pursued is determinative for tax purposes without regard to the fact that different tax results would have attached if the alternative procedure had been followed." Woodruff v. Commissioner, 5 Cir., 1942, 131 F. 2d 429, 430. Indeed the statute directs that the "manner" [4] of the transaction be a controlling factor.

To the same effect, see *Thomas J. French*, 26 T.C. 263, 268-269.

The foregoing is a complete answer to petitioner's position herein.

*Decision will be entered for the respondent.*

---

[4] The word "manner" is contained in section 115(g) of the 1939 Code which speaks of the cancellation or redemption of stock "at such time and in such *manner* as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend." (Emphasis supplied.) In the recodification of these provisions in the 1954 Code the pertinent language was reduced simply to redemptions "essentially equivalent to a dividend" in section 302(b). And except for certain situations (not present here), the new provisions were intended to incorporate the interpretation given section 115(g) of the prior law. See *Thomas G. Lewis*, 35 T.C. 71, 76-77.