W. P. Bunton, Sr., and Pearl B. Bunton v. Commissioner.
Bunton v. Commissioner
Docket No. 1358-65.
United States Tax Court
T.C. Memo 1968-3; 1968 Tax Ct. Memo LEXIS 294; 27 T.C.M. (CCH) 9; T.C.M. (RIA) 68003; January 4, 1968, Filed *294 Held: The payment of $59,760 to W. P. Bunton, Sr., by the Bunton Seed Company, reimbursing him for the amount he had previously paid to Ross and Butler for all their stock in the corporation, was not essentially equivalent to a dividend but was a distribution by the corporation in full payment in exchange for the stock of Ross and Butler within the meaning of sections 302(a) and (b)(1), I.R.C. 1954. Louis E. Ackerson, M. E. Taylor Bldg., Louisville, Ky., and Robert L. Ackerson, for the petitioners. Sanford S. Neuman, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined a deficiency in income tax in the amount of $44,819.53 for the calendar year 1962. The only issue presented is whether the payment of $59,760 to petitioner W. P. Bunton, Sr., by the Bunton Seed Company reimbursing him for the amount he had previously paid to two minority stockholders for all of their stock in the corporation constitutes a dividend. Another issue raised in the petition, which arose out of respondent's determination that petitioners realized a long-term capital gain on the exchange of their stock in the Bunton Seed Company for stock in the Bunton Investment *295 Company "inasmuch as the exchange was not in connection with a statutory reorganization," has been conceded by respondent. A further adjustment contained in the statutory notice relating to a medical expense deduction will depend upon the decision of the contested issue. Findings of Fact The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The petitioners are husband and wife. During all years concerned they resided in Anchorage, Kentucky. W. P. Bunton, Sr., also known as Price Bunton, is sometimes referred to herein as the petitioner. The petitioners filed a joint Federal income tax return for the calendar year 1962 with the district director of internal revenue at Louisville, Kentucky. The Bunton Seed Company was originally incorporated in 1924 under the laws of the Commonwealth of Kentucky as the Bunton & Huber Company, to engage in the business of selling flowers, plants, seeds, garden tools and related items. The corporate name was changed to Bunton Seed Company in 1929. As of January 1 and May 1, 1962, the shareholders of the Bunton Seed Company, their titles, and number of shares owned were as follows: Shareholder
Title
VotingShares
Non-VotingShares
W. P. Bunton, Sr.
President
357.00
Pearl B. Bunton
27.50
13.75
T. L. Bunton, Sr.
Treasurer
66.50
20.00
Herbert F. Bunton
First Vice-Pres.
33.25
88.75
Robert E. Butler
20.00
10.00
W. P. Bunton, Jr.
Second Vice-Pres.
33.25
71.625
Charles D. Ross
146.00
73.00
T. L. Bunton, Jr.
2.50
Thomas Lewis Bunton, III
4.50
Yolanda Mae Bunton
10.00
Vicki Lynn Bunton
17.125
Winfred P. Bunton, III
17.125
Elizabeth C. Bunton
17.125
*296 10 Charles D. Ross is not related by blood or marriage to any other stockholder in the company. He acquired his stock in the years 1928 through 1948. Robert E. Butler is not related by blood or marriage to any other stockholder. He was for many years the secretary of the Bunton Seed Company until his resignation on January 11, 1954. He acquired his capital stock in the years 1928 through 1948. Herbert F. Bunton and W. P. Bunton, Jr. are sons of petitioners. T. L. Bunton, Sr. is the brother of W. P. Bunton, Sr. Since 1944 and until 1962 the Bunton Seed Company owned and operated and had as its principal and only place of business the premises known as 300 - 310 E. Jefferson Street and 313 E. Liberty Street in Louisville. This entire tract of realty and improvements thereon [were] condemned on March 29, 1962, by the Commonwealth of Kentucky, Department of Highways, for use in connection with the construction of Interstate Route 65, commonly known as the North-South Expressway. Prior thereto at the annual meeting of the Board of Directors begun on January 10, and adjourned from time to time to January 11, 16 and 27, 1961, discussions were had concerning steps which might be taken by the *297 corporation upon condemnation of its property. These included the purchase of other property at which the business might be continued and also liquidation of the corporation. At a special meeting of the stockholders and board of directors, held on March 28, 1962, a resolution was adopted authorizing the chairman, W. P. Bunton, Sr., to accept the amount offered by the Highway Department as consideration for the transfer of the company's property on East Jefferson Street and to execute any and all documents necessary in connection with such transfer. A number of other resolutions were adopted at this same meeting, including: (1) one to dissolve the corporation and distribute all of its assets to the stockholders in proportion to their stock ownership; (2) one to change the name of the present corporation to "Price Bunton, Inc.,"; (3) one to form a new company to be known as "Bunton Seed Company" to engage in the same general business then being conducted by the present Bunton Seed Company, all the stock of the new company to be owned by the corporation and to be issued in consideration of the tangible personal property then owned by the corporation; and (4) one authorizing the use of *298 the name "Bunton Seed Company" by the new corporation to be formed. Pursuant to the resolution to dissolve and section 6043 of the Internal Revenue Code of 1954, a notice (Form 966) dated March 29, 1962, was filed on behalf of the Bunton Seed Company with the district director of internal revenue at Louisville. In that connection, the officers and directors had been advised by tax counsel (petitioners' attorney herein) that they would have a year in which to complete the liquidation or to decide to continue in business. A decision not to continue the seed business was not made until the latter part of May 1962. In the meantime, both Ross and Butler had informally advised petitioner they were not in favor of continuing the seed business and had requested that they be paid cash for their stock. On May 3, 1962, the Bunton Seed Company issued its check in the amount of $6,000 to petitioner and debited this amount to a note receivable account on its books. On May 4, 1962, petitioner issued his personal check in the amount of $7,200 to Robert E. Butler in full payment for all of the latter's outstanding stock in the Bunton Seed Company. This represented a payment of $240 per share. The proceeds *299 from the condemnation of the realty of Bunton Seed Company, being a check in the amount of $152,381.70, were received by the company and deposited in its corporate bank account on May 11, 1962. The company realized a gain from the disposition of its realty in the amount of 11 $112,536.05 (amount realized $152,500 less adjusted basis of $39,963.95). On May 14, 1962, the Bunton Seed Company issued its check in the amount of $60,000 to petitioner and debited this amount to a note receivable account on its books. On May 14, 1962, petitioner issued his personal check in the amount of $52,560 to Charles D. Ross in full payment for all of the latter's outstanding stock in the Bunton Seed Company. This represented a payment of $240 per share. On May 25, 1962, the Bunton Seed Company issued a check in the amount of $59,760 to petitioner reimbursing him for the total amount which he had paid to Butler and Ross for all of their stock. The company debited its capital stock account in the amount of $24,900 and debited the balance of $34,860 to its surplus account. On May 25, 1962, petitioner issued his check to Bunton Seed Company in the amount of $66,000, and it was deposited to the company's *300 bank account on the same date. On May 31, 1962, the company credited its notes receivable account in the amount paid by petitioner. None of the stock owned by either Robert E. Butler or Charles D. Ross was ever transferred into the name of petitioner or any other person. Their certificates were cancelled on the stock record book of the company on May 25 and 26, 1962. Herbert F. Bunton, W. P. Bunton, Jr., Vicki Lynn Bunton, Winfred P. Bunton, III, and Elizabeth C. Bunton each received consideration from Bunton Seed Company in the amount of $240 for each share of stock owned by them, and their certificates were cancelled on July 31, 1962. T. L. Bunton, Jr., Thomas Lewis Bunton, III, and Yolanda Mae Bunton each received consideration from Bunton Seed Company in the amount of $275 for each share of stock owned by them, and their certificates were cancelled in May 1962. On May 24, 1962, a special meeting of the board of directors of Bunton Seed Company was called for the purpose of formulating a plan and agreement for the acquisition by W. P. Bunton, Jr., of the business then being conducted by the company. Arrangements were authorized for transferring the inventory, fixtures, vehicles *301 and supplies at book value as of July 31, 1962, and the right to use the corporate name. The company agreed to form, or lend its assistance in forming, a new corporation with the same name. The company agreed to retire the stock held by W. P. Bunton, Jr., in the then Bunton Seed Company, at $275 per share. A motion was also adopted authorizing W. P. Bunton, Sr., to retire the stock purchased from R. E. Butler and Charles D. Ross. A special meeting of the stockholders and directors of Bunton Seed Company was held on July 26, 1962. The minutes of this meeting state, in part: W. P. Bunton, Sr. was elected Chairman of the meeting and W. P. Bunton, Jr. acted as Secretary thereof. The Chairman stated that he had previously caused the Corporation to acquire all of the issued and outstanding stock of the Corporation, both voting and nonvoting, of Charles D. Ross, Robert E. Butler, and T. L. Bunton, Jr., and was presently in the process of acquiring all of the issued and outstanding stock, both voting and nonvoting, presently owned by W. P. Bunton, Jr., and W. P. Bunton, III, Elizabeth Bunton, Vicki L. Bunton, and Herbert F. Bunton, which acquisition had previously been authorized and approved *302 by the Board of Directors; that as part of the consideration for the acquisition of the stock of the above-named Stockholders, for the purpose of redemption, Herbert F. Bunton and Vicki L. Bunton were to acquire the stock of the Bunton Company, owned by Bunton Seed Company. W. P. Bunton, Jr., W. P. Bunton, III, and Elizabeth Bunton had agreed to receive as consideration for their stock certain tangible assets of the Corporation in addition to cash, representing the agreed redemption price of their stock; that it was further agreed that the Bunton Seed Company would discontinue its operations as a corporation dealing in seed and garden and related products and commodities, which business would be continued by a corporation, all of the capital stock of which would be owned by, and which would be operated by, W. P. Bunton, Jr.; that it had further been agreed that this Corporation would operate under the name, "Bunton Seed Company." Thereafter, the President stated that the first order of business was authorization of an amendment to the Articles of Incorporation of the Corporation so as to change the name of the Corporation to "Bunton Investment Company", and to further amend the Articles *303 of Incorporation so as to eliminate from the powers and purposes of the Corporation the right to engage in the seed, garden, and other related businesses, that is, to eliminate the powers contained in Article III of the Articles of Incorporation, and to substitute in lieu of the powers now contained in Article III, the right to invest and lend money and deal in real estate generally. 12 A resolution to this effect was adopted. A further resolution was adopted consenting to the use of the name "Bunton Seed Company" by a corporation to be formed, all of the stock of which was to be owned by W. P. Bunton, Jr. The resignations of Charles D. Ross, Robert E. Butler, Herbert F. Bunton, W. P. Bunton, Jr., and T. L. Bunton, Sr., as officers and directors were accepted. W. P. Bunton, Sr., was then elected as a director and president; W. P. Bunton, Jr., was elected as a director and vice-president-treasurer; and Louis E. Ackerson was elected a director and secretary of the company. On July 31, 1962, pursuant to the resolution adopted at the meeting of July 26, 1962, the amendment to the articles of incorporation of the then Bunton Seed Company, changing its name to "Bunton Investment Company" *304 and changing its corporate powers, was filed with the Secretary of State of Kentucky and, on August 1, 1962, with the Clerk of the County Court, Jefferson County, Kentucky. The amendment to the corporate powers, in general, authorized the company to buy, sell and improve lands, to borrow and loan money, and otherwise to engage in various types of investment transactions. On August 1, 1962, W. P. Bunton, Sr., and Pearl Bunton, and T. L. Bunton, Sr., each received new stock certificates in the Bunton Investment Company in the same number of shares as owned by these shareholders in the Bunton Seed Company. During the latter part of July, 1962, W. P. Bunton, Jr. formed a new corporation using the name "Bunton Seed Company." He contributed to the new corporation a substantial part of the $25,170 which he had received from the old Bunton Seed Company in exchange for his stock. On or around July 31, 1962, the new corporation purchased from the old seed company a portion of the latter's furniture, fixtures, seed inventory, etc., and commenced the operation of the retail and wholesale seed business which had previously been conducted by the old Bunton Seed Company. The Bunton Investment Company, *305 on June 7, 1963, purchased real property located at 831-839 East Broadway in Louisville. This was rental property, the tenants of which were the Tafel Motor Company and the Smith Distributing Company. This realty and improvements have continued to be leased by the Bunton Investment Company to those tenants from the date of its acquisition to the date of the hearing herein. On or about July 31, 1962, Bunton Investment Company ceased to engage in the retail and wholesale sale of seed and/or lawn or garden equipment, which business it had continuously conducted since 1924. Its only activity was the investment of its cash funds until June 7, 1963, when it acquired the aforementioned realty. Prior to July 31, 1962, the Bunton Seed Company had been engaged only in the business of selling seed and/or lawn or garden equipment. It had not engaged in the business of investing in realty or marketable securities. The income of Bunton Seed Company, the amount of dividends paid by it, and its earned surplus during its taxable years ended November 30, 1949 through November 30, 1962, were as follows: Taxable YearEnded
Net or TaxableIncome, Per Return
DividendsDeclared andPaid
Earned Surplus
11/30/49
$26,672.11
$15,435.00
$ 76,631.93
11/30/50
33,707.45
6,174.00
93,773.73
11/30/51
22,163.01
10,290.00
99,277.72
11/30/52
27, 999.86
10,290.00
108,054.94
11/30/53
26,064.39
10,290.00
116,075.03
11/30/54
23,212.74
10,290.00
122,092.65
11/3 0/55
20,577.88
8,232.00
128,258.06
11/30/56
18,620.89
8,232.00
132,945.28
11/30/57
(7,481.04)
8,232.00
119,156. 16
11/30/58
14,505.30
0
131,632.32
11/30/59
12,530.39
5,145.00
133,962.29
11/30/60
(24,976.76)
6,174.00
110,487.93
11/30/61
12,305.38
0
118,866.83
11/30/62
20,110.49
6,174.00
49,440.37
*306 The taxable income and earned surplus of the Bunton Investment Company, as reflected in its Federal income tax returns, for its taxable years ended November 30, 1963 through November 30, 1965, were as follows: 13 Taxable
Taxable Income
Earned
Year Ended
Per Return
Surplus
11/30/63
$ 1,383.81
$134,224.12
11/30/64
7,787.15
139,256.25
11/30/65
11,883.50
145,545.05
During the taxable years ended November 30, 1949 through November 30, 1961, the Bunton Seed Company paid taxes on its income as follows: Taxable YearEnded
FederalIncome Tax
State Tax
City Tax
11/30/49
$ 6,168.03
$729.34
0
11/30/50
10,231.90
978.15
$456.32
11/30/51
6,209.27
751.75
228.43
11/30/52
8,927.33
898.43
81.99
a 152.28
11/30/53
7,567.28
870.95
214.80
11/30/54
6,775.52
774.53
184.98
11/30/55
6,067.67
682.38
158.71
11/30/56
5,580.02
686.36
184.50
11/30/57
b (2,244.31)
0
0
11/30/58
4,351.59
534.41
150.81
c 1,994.84
11/30/59
3,759.12
469.75
135.94
d 186.80
11/30/60
b (7,349.03)
0
0
11/30/61
3,621.61
468.56
132.58 The petitioners' income tax return for 1962 reported receipt of salary or wages from Bunton Investment Co., and of dividends and interest from Bunton Seed *307 Co., Inc. The Bunton Investment Company's return for the fiscal year ended November 30, 1962 reported that the gain resulting from the condemnation was being treated as a tax-free involuntary conversion in accordance with section 1033 of the Internal Revenue Code of 1954, and that the gain was not included in gross income for the taxable year ending November 30, 1962, as the company had elected to reinvest in accordance with section 1033. Opinion Respondent contends that when petitioner, W. P. Bunton, Sr., gave his personal checks to Ross and Butler for their stock he was acting for himself and not for the corporation and consequently that the amount for which he was reimbursed by the Bunton Seed Company constitutes a dividend taxable to the petitioner under the provisions of section 301(a) and (c)(1) of the Internal Revenue Code of 1954. [1] Petitioners contend that when W. P. Bunton, Sr., gave his personal checks to Ross and Butler he was acting for and on behalf of the corporation and that the reimbursement to him in the exact amount he had paid Ross and Butler was not one essentially equivalent to a dividend but is to be treated as a distribution by the corporation in full payment *308 in exchange for the stock of Ross and Butler under the provisions of section 302(a) and (b)(1) of the Internal Revenue Code of 1954. [2]
The controlling question is essentially one of fact *309 to be determined from all the facts and circumstances of the particular case. See United States v. Carey, 289 F. 2d 531, 537 (C.A. 8, 1961), and cases cited therein; John A. Decker, 32 T.C. 326, affd., 286 F. 2d 427 (C.A. 6, 1960); Income Tax Regs., section 1.302-2(b). The petitioners, their relatives and associates had operated, since 1924, a corporation engaged in the business of selling flowers, plants, seeds, garden tools and related products. Since 1944 they had carried on this business at a location on East Jefferson Street in Louisville. Petitioner W. P. Bunton, Sr., had voting control of the corporation, holding 357 shares out of 686 shares of voting stock outstanding, but several other individuals had substantial amounts of voting and non-voting shares. Two sons of the petitioners had shares of stock and hold offices in the corporation. Petitioner's brother, T. L. Bunton, Sr., and nephew T. L. Bunton, Jr., were stockholders. There were two stockholders, Charles D. Ross and Robert E. Butler, who were unrelated to the Bunton family. 14 As early as January 1961 the shareholders were aware that the corporation's place of business was to be taken by the state for highway purposes *310 and that they faced a decision regarding continuation of the business at a different location, changing the nature of the business, or liquidating the corporation. There were conflicting views among the officers and stockholders and several alternatives were discussed both formally and informally. At a directors' meeting in March 1962, resolutions were adopted to change the corporation's name to Price Bunton, Inc., to form a subsidiary corporation to take over the seed and plant business, and to allow the new corporation to use the name Bunton Seed Company. At the same time, a resolution was adopted authorizing the dissolution of the then Bunton Seed Company and pursuant to that action a notice of intention to liquidate was filed with the district director of internal revenue. The latter action was taken on advice of counsel that they would have a year from the date of the adoption of that resolution, within which to complete liquidation or to decide to continue in business. These plans were subsequently modified. The Bunton Seed Company changed its corporate name to the Bunton Investment Company and changed its corporate powers so as to eliminate the seed business and authorize it *311 to buy, sell and improve lands, to borrow and loan money, and, in general, to engage in an investment business. W. P. Bunton, Jr., formed a new company to carry on the seed and plant business under the name Bunton Seed Company and purchased the inventory, office furniture and equipment previously used by the old Bunton Seed Company in that business. The old Bunton Seed Company retired all of its outstanding stock except the shares held by W. P. Bunton, Sr., Pearl B. Bunton and T. L. Bunton, Sr., which were exchanged for equal numbers of shares of the Bunton Investment Company. Prior to the final decision of the directors and stockholders of the old corporation not to continue in the seed business, Ross and Butler having requested that they be paid cash for their shares of stock in the old Bunton Seed Company, the petitioner gave Ross and Butler his personal checks for their stock and received their certificates endorsed in blank. In order to do so without the necessity of liquidating other investments which he owned, petitioner temporarily borrowed first $6,000 and later, after it had received the condemnation proceeds from the State Highway Department, $60,000 from the corporation. *312 After it was finally decided not to continue in the seed business and that the corporation would not need all of its available cash to purchase new quarters for such business, the corporation reimbursed petitioner for the amounts he had personally paid Ross and Butler and retired their stock. The certificates formerly owned by Ross and Butler were never transferred to the name of petitioner or any other person but were cancelled on the stock record book of the corporation. We are satisfied from all the facts and circumstances that at the time he gave his personal checks to Ross and Butler, petitioner considered he was acting for and on behalf of the corporation. He so reported to the stockholders and directors at the meeting on July 26, 1962, and they apparently so considered it when they finally decided to discontinue the seed business, and on May 24, 1962, authorized the retirement of the stock "purchased from" Ross and Butler. Petitioner had no desire to acquire the stock of Ross and Butler for himself and never intended to do so unless the directors and stockholders decided to continue in the seed business, in which event the corporation would need all of its available cash to *313 purchase other quarters and petitioner would have to liquidate other investments owned by him in order to repay the temporary loans from the corporation This contingency did not occur and petitioner's acquisition of the stock for himself was not formally completed. The certificates were never transferred to his name. He merely held the certificates endorsed in blank for less than one month when the corporation reimbursed him for the amounts he had paid Ross and Butler and cancelled their stock certificates. The facts in this case distinguish it from Wall v. United States, 164 F. 2d 462 (C.A. 4, 1947); Louis H. Zipp, 28 T.C. 314, affd. per curiam, 259 F. 2d 119 (C.A. 6, 1958); Schalk Chemical Co., 32 T.C. 879, affd., 304 F. 2d 48 (C.A. 9, 1962); McGinty v. Commissioner, 325 F. 2d 820 (C.A. 2, 1963), affirming 38 T.C. 882; and Sullivan v. United States, 363 F. 2d 724 (C.A. 8, 1966), relied upon by 15 respondent. In those cases, the controlling stockholder owned the stock or was under a contractual obligation to purchase it for himself. In the present case, while the petitioner gave his personal checks to Ross and Butler, he did so as a temporary expedient in order that the corporation *314 might acquire and retire the stock in the event it did not continue in the seed business. In our opinion, the payment of $59,760 to W. P. Bunton, Sr., by the Bunton Seed Company, reimbursing him for the amount he had previously paid to Ross and Butler for all their stock in the corporation, was not essentially equivalent to a dividend but was a distribution by the corporation in fulll payment in exchange for the stock of Ross and Butler within the meaning of section 302(a) and (b)(1) of the Internal Revenue Code of 1954. We so hold. Cf. Fox v. Harrison, 145 F. 2d 521 (C.A. 7, 1944); John A. Decker, supra.
Decision will be entered for the petitioners. Footnotes
a. Additional Tax for 1950. ↩
b. Federal Income Tax Refunds. ↩
c. Additional Tax for 1955 and 1956. ↩
d. Additional Kentucky Tax for 1955 and 1956.↩
1. SEC. 301. DISTRIBUTIONS OF PROPERTY. (a) In General. - Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c). * * * (c) Amount Taxable. - In the case of a distribution to which subsection (a) applies - (1) Amount Constituting Dividend. - That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income. ↩
2. SEC. 302. DISTRIBUTIONS IN REDEMPTION OF STOCK. (a) General Rule. - If a corporation redeems its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (3), or (4) of subtion (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock. (b) Redemptions Treated as Exchanges. - (1) Redemptions not Equivalent to Dividends. - Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend.↩